THE STATE OF CALIFORNIA DEPARTMENT OF MENTAL HYGIENE, Petitioner
V.
BANK OF THE SOUTHWEST NATIONAL ASSOCIATION ET AL, Respondents

No. A-8640. Decided February 21, 1962
Rehearing Denied March 21, 1962
354 S.W. 2d 576

*Stanley Mosk,* Atty. Gen., Sacramento, Cal., *Elizabeth Palmer,* Deputy Attorney General, *Dillingham, Schleider & Lewis (John S. Brunson,* Houston, with firm), *Sam L. Sterrett, Jr.,* Houston, for petitioner.

*Baker, Botts, Andrews & Shepherd,* Houston, *(Wm. R. Choate,* Houston, with firm), for respondents.

ASSOCIATE JUSTICE NORVELL delivered opinion of the Court.

This is a suit to recover moneys expended in caring for the beneficiary of a support trust. The case turns upon the construction of the trust instrument. The State of California Department of Mental Hygiene sued the Bank of the Southwest, as trustee, and the heirs of Henrietta Cargill Adkins, a beneficiary of the trust, claiming some $5,000 was due the department under the terms of a testamentary trust established by Ennis Cargill. The trial court rendered a summary judgment that plaintiff take nothing and the Court of Civil Appeals has affirmed. 348 S.W. 2d 731.

Ennis Cargill died testate on November 26, 1938. His will created a testamentary trust for the benefit of his two daughters, Ruby Tennie Cargill and Henrietta Cargill Adkins. Pertinent portions of the trust instrument are set forth in the opinion of the Court of Civil Appeals. The provisions having a particular bearing upon our holdings are as follows:

"(b) My daughter Ruby Tennie Cargill (born 4 Dec. 1898) is at the time of the execution of this will confined in a state hospital of the State of California; \* \* \* having been committed to said institution on December 22, 1932. I *have been called upon* to make payments in amounts not exceeding $25. per month for the purpose of maintaining her in said institution and defraying additional incidental expenses. So long as my said daughter is confined in said institution, or in any other institution, I direct the Trustee to pay to the proper authorities of such institution for the use and benefit of my said daughter and to defray the expense of her maintenance therein a like sum of money each month, unless a greater or lesser amount is required, in which event the Trustee shall pay the amount *so required,* provided, however, that in no event shall the amounts so paid exceed the maximum amount required by such institution from time to time for persons confined under such circumstances and for reasons similar to those which brought about the commitment of my said daughter. In any event the amounts so to be paid and expended by the Trustee shall be determined in its unlimited judgment and discretion taking into consideration all facts and circumstances attendant upon my said daughter's condition and requirements. In lieu of payments to said institution the Trustee may make payments in like amounts to the mother of my said daughter in reimbursement of sums paid out by her for such purposes.

"In the event that my said daughter has been released from said institution prior to my death, or should she be released by due, proper and legal proceedings after my death, by reason of the cessation of the cause of her commitment thereto, then and in either of such events, I direct that the Trustee shall pay to her out of the net income $150. per month for and during the term of her natural life, or until such time as she may again be committed to the same or a similar institution, in which event the provisions set forth in the next preceding paragraph of this sub-paragraph (2) shall become applicable. * * *

"(d) When my daughter Henrietta Cargill reaches the age of 40 years, or upon her death prior thereto, if my daughter Ruby Tennie Cargill, be then living, the Trustee shall, subject to the further provisions hereof, set apart and hold under the further provisons hereof such portion of the Trust Estate as shall at time thereof yield at the then reasonable rate of return on investments the sum of $1800. per annum net over and above the then reasonable expenses of administering said fund hereunder, including the compensation of the Trustee. Such fund so set apart shall be held during the natural life of my daughter, Ruby Tennie Cargill, and the net income therefrom shall be utilized, expended and paid to or for her as provided in sub-paragraph (b) above. The balance of the Trust Estate then remaining, or if my daughter Ruby Tennie Cargill be then dead, the entire Trust Estate shall be paid and delivered, free of the Trust, to my daughter Henrietta Cargill, and the Trust shall terminate with respect thereto. Upon the death of my daughter Ruby Tennie Cargill, the portion of the Trust Estate set apart and held for her as above provided shall be paid and delivered, free of the Trust, to my daughter, Henrietta Cargill, and the Trust shall terminate with respect thereto. * * *

"(g) * * * During the time that my daughter Ruby Tennie Cargill is confined in an institution, or thereafter, the Trustee may make from time to time disbursements from the excess net income and/or principal of the Trust Estate, or from the portion set apart for her, as above provided, to meet any emergency or necessity arising, in like manner and for like purposes as specified in the next preceding paragraph, the amount, time, and desirability of and the necessity for such disbursements to be determined wholly in the discretion of the Trustee." (Italics added.)

Henrietta Cargill Adkins became forty years of age in 1952, whereupon the trustee partitioned the estate in accordance with the provisions of the trust instrument. A portion calculated to yield a net sum of $1800 per year was retained for the benefit of Ruby Tennie Cargill, and the balance distributed to Henrietta Cargill Adkins free of trust. The latter died in 1956, and her surviving husband and children are respondents here.

Ruby Tennie Cargill is incurably insane and has been a patient in the state hospitals of California at all times material to this suit. Upon the testator's death in 1938, the trustee made payments of $25.00 monthly to Mrs. Ruby Cargill, mother of Ruby Tennie Cargill, as reimbursement for payments made by her to the California agency. When Mrs. Cargill died in 1952, the trustee sent the $25.00 payments directly to petitioner. These monthly payments continued through 1956.

In February, 1957, petitioner wrote the trustee that the current charge for care and treatment of Ruby Tennie Cargill was $134.00 per month. Petitioner also demanded $5100.00 as reimbursement for past support, claiming that this sum, together with the $25.00 per month which had been paid represented the reasonable and actual expense of maintaining Ruby Tennie Cargill from 1952 to 1957. This letter was the first advice which the trustee received that a charge in excess of $25.00 per month was due and payable for the support of Ruby Tennie Cargill.

Shortly after receipt of this letter, the trustee commenced making payments of $134.00 per month. It refused however to pay the additional $5100.00 demanded for back support and that sum is the subject matter of this litigation.[1]

█ In affirming the trial court's summary judgment against petitioner, the Court of Civil Appeals held that under the trust instrument, it was necessary for petitioner to demand in advance an increase in support payments before the trustee would be liable therefor. Section (b) of the trust instrument, above quoted, directs the trustee to pay $25.00 per month to petitioner "unless a greater or lesser amount is *required,* in which event the trustee shall pay the amount so *required* * * *."

█ Petitioner urges that the word "required", as used by this

---

1. Since 1957, the expense of maintaining Ruby Tennie Cargill has increased from $134.00 monthly to $178.00 and later to $183.00 per month. The trustee has made payments accordingly. There is no dispute as to expenses after February of 1957, as the trustee has paid all sums requested by petitioner.

testator, should be construed as synonymous with "needed", rather than with "demanded", as held by the courts below. It is said that the trust instrument requires the trustee to pay all reasonable and necessary support charges regardless of whether or not there was an advance demand therefor. In support of this contention, petitioner cites a number of cases in which the courts have defined "required" to mean "needed" under various factual situations. Boyce v. Stringfellow, Texas Civ. App., 114 S.W. 652, no wr. hist., and cases cited therein; Hull v. Holloway, Sup. Ct. of Errors, Conn., 20 Atl. 445; In Re Martin's Will, 269 N.Y. 305, 199 N.E. 491.

There are also cases which announce the definition sought by respondents. See Bain v. Coats, Tex. Com. App., 244 S.W. 130. Webster's Third New International Dictionary gives definitions of the word "require" which support both positions. The only conclusion to be drawn from these authorities is the oft-repeated truism that words are simply implements of communication, and imperfect ones at that. Oftentimes they cannot be assigned a rigid meaning, inherent in themselves. Rather, their meaning turns upon use, adaptation and context as they are employed to fit various and varying situations.[2]

Petitioner contends that to equate "required" with "demanded" would violate the manifest intentions of the testator in that it would eliminate all discretionary authority of the trustee and reduce the trustee to a mere bookkeeper or disbursing agent. It is said that such a construction would relieve the trustee of its duty to look after the welfare and needs of the beneficiary, Ruby Tennie Cargill. This argument is based upon the proposition that the two possible definitions of "required" are mutually exclusive. Thus, petitioner says that if the trustee need not pay additional support money unless such is demanded, he is divested of all discretion in seeing that the beneficiary's needs are met.

In the event of a demand for increased support payments, it would seem that under the provisions of the will the trustee would have the right to determine whether such increases were *necessary* to the well-being of the beneficiary before complying with the request. Indeed, the testator gave one guide to the trustee in making such a determination by stating in the trust

---

2. The well-known dictum of Mr. Justice Holmes seems particularly appropriate here:

"Words do not always mean the same thing. A 'word' is not a crystal, transparent and unchanged: it is the skin of a living thought and may vary greatly in color and content according to the circumstances in which it is used. Towne v. Eisner, 245 U.S. 418, 38 S.Ct. 158, 62 L. ed. 372."

instrument that "in no event shall the amounts so paid exceed the maximum amount required by such institution from time to time for persons confined under such circumstances and for reasons similar to those which brought about the commitment of my said daughter." We might add that the testator's use of the word "required" in the phrase, "maximum amount required by such institution", is clearly used as being synonymous with "demanded" and is referable to a uniform charge set by the institution. To equate "required" with "needed" in this particular phrase would mean an instruction to the trustee to see that the beneficiary, Ruby Tennie Cargill, *needs* no more than does any other patient similarly committed. We cannot ascribe such a highly unlikely intention to this testator.

■ Moreover, the trust instrument itself recites that the testator had been *"called upon* to make payments in amounts *not exceeding* $25.00 per month", and then directs the trustee to pay *"a like sum* of money each month, *unless* a greater or lesser sum is *required"*. The testator obviously believed, and rightfully so, that his daughter was in the hands of a competent, efficient state hospital. In a normal, business-like manner he had been "called upon" to pay a stipulated monthly sum to this hospital and directed his trustee to do likewise unless more money was "required". We do not believe that the testator intended for the trustee to make periodic inquiries into the administration of this public hospital to see if the latter should be charging higher fees for its services. It seems the testator, and thereafter the trustee, could reasonably assume that petitioner was taking care of the beneficiary to the best of its capabilities at all times and that if it needed additional funds it would make a request therefor as it eventually did. Clearly the payment of this retroactive demand would not have any effect on the care already received by the beneficiary prior to 1957.

When we examine the circumstances surrounding the execution of the trust instrument as evidenced by the recitations appearing in Mr. Cargill's will, there are a number of matters that become reasonably clear. Mr. Cargill was not under the impression that the meager sum of $25.00 per month was sufficient to pay all of the actual expenses incident to his daughter's residence in the California institution. As he was *called upon* to pay only $25.00 per month and directed that after his death such amount be paid unless more be *required,* he clearly contemplated that within prescribed limits the institution should set the amount to be charged. He plainly provided that the trust

which he created should not pay more for his daughter's care than was required of others similarly situated.

From these circumstances, it seems clear that the settlor contemplated that the amount to be paid by the trust should be determined by the uniform rate set by the institution and demanded of those under some legal obligation to support an unfortunate residing in the state institution.

A number of factors enter into the rates or charges made by state and tax-supported institutions of an eleemosynary nature. In some, all expenses essential to the keep of the inmates is borne by the state or other governmental organization. In others, such expenses, theoretically at least, are to be borne by those legally liable for the support of an inmate, such as the parent or husband of an unfortunate, provided of course the person so liable is financially able to bear such burden. In still others, the expense may be borne in part by the state or some public institution and part by the family. Cargill may have considered that $25.00 per month was the family's share of the expense for keeping his daughter. In all events, even for depression times it would be incongruous to say, in view of the provisions of the will, that he considered that the $25.00 monthly payments covered all his daughter's needs and that the trustee should, from time to time, make inquiry and determine if a greater sum was needed. It appears that prior to his death, he had been making the payments required of him by the California state department. He intended that the trust should continue to make these payments as he had done. The word "required" necessarily referred to some action in the form of a demand on the part of the California agency.

It is perhaps in order to point out some distinctions. This is not a case in which support payments pass directly from a trustee to a needy beneficiary, nor do we have a situation where the beneficiary is in the care of a friend or relative who recoups expenses periodically from the trustee. Admittedly in such cases the trustee would have a more direct responsibility in caring for the beneficiary, and it is probable that the support payments would be more variable in amount and perhaps more irregular in interval. In the present case, however, the only authority that could logically determine the amount of funds required for the beneficiary's maintenance would be the officers of the mental hospital. Only they themselves could determine whether or not the petitioner was demanding enough money for the care of Miss Cargill in accordance with the policy of the State and the opera-

tional methods of the institution. The case of State v. Rubion, 158 Texas 43, 308 S.W. 2d 4, involved a suit by a state hospital for reimbursement for support of the beneficiary of a trust, but the rule of that case does not militate against the result we have reached here. The stated purpose of the trust instrument in Rubion was "to provide a means of support for my granddaughter and adopted daughter, Ella Hansley, insofar as such estate will permit, and to provide for her both in sickness and health, using therefor either the income or corpus of such estate, or both as the exigencies of the situation may require". This Court held that the trustee abused his discretion in refusing to make any provision for the payment of the State's claim, either in whole or in part. The ultimate issue in that case, however, as it is here, was the intent of the testator as reflected in the language of the trust instrument. In Rubion, the Court narrowed the question to whether the testator intended for the trust res to be used for present support and maintenance of the beneficiary or whether it was intended that none of it be used until the beneficiary was discharged from the state hospital. We do not regard this case as being in point upon the issue of the testator's intent insofar as the present trust instrument is concerned.

■ Here, as in the Court of Civil Appeals, the petitioner contends that there is a fact issue of fraud in the case. It is contended that the opening sentence of a 1952 letter of information from the trustee to petitioner misled petitioner's officers into believing that the trust instrument provided for a maximum support payment of $25.00 per month. An allegation raising this contention is not contained in petitioner's pleadings and was not raised in the trial court. The issue cannot be raised for the first time on appeal.

Our construction of the trust instrument herein set forth makes it unnecessary to discuss other matters and contentions contained in the briefs.

The judgment of the Court of Civil Appeals is affirmed.

Opinion delivered February 21, 1962.