**William I. HAMMOND, et al.,**
**Appellants,**

v.

**ALL WHEEL DRIVE CO., and A.J. Murphy, Appellees.**

**No. 09-85-056 CV.**

Court of Appeals of Texas, Beaumont.

April 10, 1986.

---

John H. Lovell, Lovell & Lyle, Dumas, for appellants.

Michael R. Garatoni, Foster, Lewis, Langley, Gardner & Banack, San Antonio, for appellees.

## OPINION

BROOKSHIRE, Justice.

Appeal from granting Motion for Summary Judgment. the suit involved the foreclosure of 5 separate tracts of land under powers of sale provided for in 5 deeds of trust. The deeds of trust secured payment of 5 different promissory notes.

The Appellants sought a declaration that a substitute trustee's sale was void. They also sued for damages for wrongful foreclosure. In September, 1982, as consideration for the purchase of a large number of lots located in Roman Forest, a subdivision, R.S.W. Unlimited, Inc., and J.R. Lovell executed and delivered a series of promissory notes in various amounts. The notes were secured by the lots. In October, 1982, R.S.W. Unlimited, Inc., conveyed, by warranty deed, all the properties securing the payment of the notes to Appellant Hammond who assumed payment of the series of notes.

Appellees became the owners and holders of the notes and deeds of trust. Meyer Jacobson was the original trustee under the deeds of trust. He resigned; his resignation was placed of record. John B. Stewart was the substitute trustee. This was done by properly recorded appointment. The Appellants defaulted on the very first payment due under each one of the five notes. The very first payments which were not paid were due on March 27, 1983. Appellants tendered nothing—not a cent.

By mail, sent March 30, 1983, which was received by each Appellant on April 4, 1983, notice was given to each Appellant that each was in default on each of the 5 notes. Demand was also made for immedi-

ate payment of the sums due. The Appellants were offered an opportunity to correct the default by making the proper payments of the sums due on or before noon of April 8, 1983.

Appellants were also notified that, if the payments due were not received by noon of April 8, 1983, the notes would be accelerated. All principal and interest would become due and payable at 12:01 p.m. on April 8, 1983, the property securing the indebtedness becoming subject to foreclosure under the power of sale. By mail dated April 11, 1983, each of the Appellants was given written notice of a scheduled substitute trustee sale to be held on Tuesday, May 3, 1983. The Appellants were provided with a copy of the notice of the substitute trustee sale. The sale was held. After applying the proceeds, a remaining deficiency was due on the notes as of May 3, 1983, of $1,070,213.27.

■ Firstly, the Appellants complain that they did not have an opportunity to cure the default. It is not disputed under this record that notice of default, presentment, demand for payment and notice of intent to accelerate were mailed on March 30, 1983, and received by the Appellants on April 4, 1983. There was notice of intention to accelerate given prior to the acceleration. Appellants claimed that the 4 days notice was insufficient time to make the payments of the sums due on the notes. But the Appellants knew the provisions of the notes that they either signed or assumed. And the Appellants knew that the failure to make the payments on the notes, when due, could result in the exercise of an option by the holder of the notes to elect to accelerate the payments of the notes. We find in *Allen Sales & Servicenter, Inc. v. Ryan*, 525 S.W.2d 863 (Tex.1975), Justice Daniel, pronouncing for a unanimous court, at page 866, wrote:

"This demand for payment of the overdue installment need not be made on the date the installment is due; the only requirement, as to the time for making the demand, is that the demand for payment of the overdue installment be made

prior to exercising the option to accelerate. See *Griffith v. Griffith*, 252 S.W.2d 517 (Tex.Civ.App.1952, writ ref'd n.r.e.); *Beckham v. Scott*, 142 S.W. 80 (Tex.Civ. App.1911, no writ). Our holding in this case should not be interpreted as requiring that demand be made prior to acceleration under all circumstances...."

We hold that the notice given to the Appellants was, under this record and under the governing documents, sufficient because the Appellants expressly waived "... grace, demand, presentment, notice, protest ..."

In a letter from Hon. Michael R. Garatoni to the Hon. J.R. Lovell, dated March 30, 1983, the makers of the notes were specifically notified by the owners that they were in default on each of the five notes. The letter specifically set out the interest payments which were due under each of the five notes on March 27, 1983. Unequivocal demand was made for the payment of the sums due under the terms of each of the five notes, reading:

"... You are hereby granted the opportunity to cure your default of the above-described Notes by making payment of the sums due under the terms of each Note on or before noon on April 8, 1983."

As a separate ground of affirmance, we hold that this was a reasonable amount of time, as a matter of law, under this record.

It is obvious from the letter of Meyer Jacobson, dated March 31, 1983, containing a description of other notes and the amounts due thereon, that the Jacobson letter was not dealing with the same notes described in the letter from Michael R. Garatoni.

It should be borne in mind that the Appellants, under their Point of Error No. One, do not complain of a lack of demand or lack of notice of intent to accelerate. Appellants' sole complaint is that the interim between the received demand and the date of acceleration did not afford the Appellants a "reasonable time to cure" default. We hold otherwise, as a matter of law, under this record. In our case sub ju-

dice, notice was given in a meticulous manner. The five notes specifically provided that:

> "Each maker, surety or endorser hereon severally waives grace, demand, presentment, notice, protest and consents that time of payment may be extended without notice...."

The notes were due on the 27th of March, 1983. The Appellants were given to April 8th, 1983, to cure the defaults. Lovell, R.S.W. Unlimited, Inc., and Hamilton knew that the interest on each of the notes was due and payable semi-annually, with the first payment specifically due on 27th day of March, 1983. This date was underlined in the notes. *Allen Sales, supra.* We hold the sole requirement to have been that the demand for payment of the overdue installment be *made prior to the exercising of the option to accelerate.*

Appellants contend John B. Stewart was not a proper substitute trustee. We find the district court did not err because there was simply no material or genuine issue of fact raised concerning the proper appointment of a substitute trustee. Appellants simply misconstrued a letter written by Meyer Jacobson. Nowhere in the letter did Jacobson even hint that he was trustee under the pertinent deeds of trust. Nor does that letter contain a demand for the payments of the notes that were owned, held and possessed by the appellees.

■ The district court correctly granted summary judgment in favor of appellees for the reason that the Appellants are not entitled to the relief sought. Appellants argue that the substitute trustee's sale is void. We disagree. Appellants have never tendered payments of any of the sums due under the five promissory notes. Our record is totally silent of any payment or tender by the Appellants of the proper sums due. The Appellants have not paid anything on the notes—not one dollar. They failed to make the very first installment payment. To obtain a rescission of the substitute trustee's sale and a cancellation and setting aside of the substitute trustee's deed, the Appellants are seeking equitable relief. They must, in turn, do equity. They have not done so.

The dissent is based, in substantial part, on *Ogden v. Gibraltar Savings Association*, 640 S.W.2d 232 (Tex.1982). The quotation in the dissent from *Ogden, supra,* begins:

> "... Thus, in the absence of a waiver, the the holder of a delinquent installment note ...."

There was, of course, a waiver in our case. The waiver was unequivocal and not limited.

Furthermore, Ogden had bought, and was paying for, a house and land located in Corpus Christi. On May 1, 1963, he executed a promissory note in the amount of $12,000.00 payable in monthly installments secured by a deed of trust. It is true that Ogden was in default at some time prior to August 17, 1978. Ogden obviously had made a very large number of installment payments on the $12,000.00 note. Ogden had paid on the note about 15 years. The property was foreclosed and the jury found that the property had a value of $49,600.00 on the date of the sale.

The Supreme Court in *Ogden* wrote (at 233):

> "The sole question with which we are concerned is whether Gibraltar gave proper notice of acceleration prior to foreclosing under the deed of trust."

That is simply not our question here. Besides, in *Ogden, supra,* the letter written by Gibraltar to Ogden was not an unequivocal demand or notice. One of the main, operative phrases used was:

> "Your failure to cure such breach on or before said date *may* result in acceleration ...." (emphasis ours)

There is no doubt that notice was given in our case and *Ogden* holds:

> "... If, after such notice, the mortgagor fails to remedy the breach, then the mortgagee is authorized to accelerate maturity and begin foreclosure proceedings under the deed of trust...."

738

It should be borne in mind, and it is significant, that the makers of the note and Hammond, who assumed the note, knew the due date of March 27, 1983. The notice of default only required that the very first installments be paid by April 8 at high noon. In reality, since the makers and the assumer of the promissory note knew the due date; *they had, in reality,* four days in March and seven and one-half days in April, *a total of about eleven days to cure the default.* In our case, the very first installment was not paid or tendered. *Ogden, supra,* is meaningfully different; it cannot be controlling or governing of our case; it is not parallel.

■■■ The motion for summary judgment filed by All Wheel Drive and A.J. Murphy brought into play the five promissory notes, and the affidavits in support thereof, as set out in Exhibits A, B, C, D, and E. These exhibits are actual photostatic copies of the five promissory notes made, executed, and delivered originally by R.S.W. Unlimited, Inc., and J.R. Lovell. These actual notes were before the trial court. These notes specifically and unequivocally contained the waivers as set out above. We do not think it is incumbent upon the movant to plead separately every paragraph of the said notes, under the record in this case. The exhibits were before the trial judge; hence, the issue of waiver was not raised for the first time on appeal. In any event, *State of Cal. Dept. of M. Hyg. v. Bank of S.W. Nat. Ass'n,* 163 Tex. 314, 354 S.W.2d 576 (1962), (cited by the dissent), involved a trust instrument. *State of Cal. Dept. of M. Hyg., supra,* is very different from our case; it is clearly distinguishable.

The appellate brief of William Hammond and others concedes that the Appellants, R.S.W. Unlimited, Inc., and Lovell, executed the promissory notes. On October 30, 1982, the property was sold to Appellant, Hammond, who assumed the notes.

The appellate brief of the nonmovants also concedes that these notes and liens were assigned to All Wheel Drive Co.; the same brief concedes a default on the indebtedness occurred at least by March 28, 1983. The demand letter was received. The same brief concedes that Garatoni's demand and notice gave the nonmovants until noon of April 8, 1983, to cure the default of the first installment. There was no demand that the entire indebtedness of approximately $1,600,000.00 was to be paid prior to noon April 8, 1983.

### THE TEXAS BUSINESS & COMMERCE CODE

TEX.BUS. 7 COM. CODE ANN. sec. 3.504 (Vernon 1968) defines presentment as follows:

"Sec. 3.504

"(a) Presentment is a demand for acceptance or payment made upon the maker, acceptor, drawee or other payor by or on behalf of the holder.

. . . .

"(c) It may be made

"(1) to any one of two or more makers, acceptors, drawees or other payors; or

"(2) to any person who has authority to make or refuse the acceptance or payment."

Sec. 3.506 provides as follows:

"(a) Acceptance may be deferred without dishonor *until the close of the next business day following presentment.* The holder may also in a good faith effort to obtain acceptance and without either dishonor of the instrument or discharge of secondary parties allow *postponement of acceptance for an additional business day.* (Emphasis added)

These statutory provisions make it manifestly clear that the duration of time as contemplated by the Supreme Court's opinion in *Allen, supra,* is parallel and similar to the time for payment upon presentment as set forth in the statutes.

■■■ At oral submission, appellees fervently argued that we should add 10% to

the original decree pursuant to *TEX.R. CIV. P. 438.* But the added 10% as damages, under *Rule 438,* was not briefed by appellees. Appellants did not favor us with oral argument. Had this matter been properly briefed, we probably would have granted the additional 10% damages under this record. This request, we perceive, has forceful merit. Reluctantly, we decline to add 10% to the judgment.

AFFIRMED.

BURGESS, Justice, dissenting.

I respectfully dissent. First, the majority affirms the case by holding, as a matter of law, appellants were given a reasonable amount of time to cure the default. *Ogden v. Gilbralter Savings Association,* 640 S.W.2d 232, 233 (Tex.1982) stated:

"Thus, in the absence of a waiver, the holder of a delinquent installment note must present the note and demand payment of the past due installments prior to exercising his right to accelerate. [citation omitted] In the case of a mortgage secured by a deed of trust, such notice must afford an opportunity to cure the default...."

Certainly, four days cannot be said, as a matter of law, to be an opportunity to cure. If the requirement of *Ogden, supra,* is to mean anything, the debtor must have a reasonable opportunity to cure the default. Whether this four-day period was in fact "an opportunity to cure" was a question of fact and precluded summary judgment.

Next, the majority affirms the case by holding that the notes contained "waiver" clauses and thus, the question of an opportunity to cure is really moot. However, appellees did not raise the issue of "waiver" in their motion for summary judgment. They cannot, therefore, raise it for the first time on appeal. *State of Cal. Dept. of Mental Hygiene v. Bank of Southwest Nat. Ass'n,* 163 Tex. 314, 354 S.W.2d 576 (1962). Therefore, I would reverse this summary judgment and remand the case.