Alt v. Key 















IN THE
TENTH COURT OF APPEALS
 

No. 10-91-129-CV

Â Â Â Â Â JEWELL ALT, ET AL.,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellants
Â Â Â Â Â v.

Â Â Â Â Â WILLIAM F. KEY, M.D., ET AL.,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellees
 

From the 220th District Court
Bosque County, Texas
Trial Court # B-161-89
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

O P I N I O N
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â Â Â Â Â Â Jewell Alt and Howard Alt, individually and on behalf of the estate of Russell Alt, sued Dr.
William Key, Dr. T.W. Murphy, and Clifton Medical & Surgical Clinical Association for medical
malpractice in connection with Russell Alt's death. The jury refused to find that Dr. Key and Dr.
Murphy were negligent but found that Jewell and Russell Alt's negligence was the proximate cause
of Russell's death. Jewell and Howard complain that, because Dr. Key was negligent as a matter
of law, the court erred when it denied their motion for a new trial. They also argue that the
refusal to find Dr. Key negligent was against the great weight and preponderance of the evidence. 
We affirm.
Â Â Â Â Â Â On September 4, 1988, Russell Alt, accompanied by his wife, Jewell, who is a pharmacist,
went to the emergency room at Goodall-Witcher Hospital. Russell was experiencing symptoms
commonly associated with heart problems. Dr. Key, the attending physician, recommended
hospitalization. The Alts, however, claimed they could not afford hospitalization and did not have
insurance that would cover the costs. Thus, they left the hospital with prescription medications
and instructions to report to a clinic in forty-eight to seventy-two hours. On September 6 Russell
went to the clinic and claimed to be feeling better. However, on September 8 he died of
complications resulting from a heart attack.
STANDARD AND SCOPE OF REVIEW
Â Â Â Â Â Â The first and third points are that, because Dr. Key's negligence on September 4 and
September 6 was established as a matter of law, the court erred when it denied the motion for a
new trial. Findings of fact are binding on the appellate court unless either the contrary is
established as a matter of law, or there is no evidence to support the finding. McGalliard v.
Kuhlmann, 722 S.W.2d 694, 696 (Tex. 1986). When reviewing the evidence, this court must
disregard all evidence to the contrary and uphold the finding if there is any evidence to support
it. See id. at 696-97. 
Â Â Â Â Â Â Jewell and Howard complain in points two and four that the jury's refusal to find Dr. Key
negligent on September 4 and September 6 was against the great weight and preponderance of the
evidence. This is the standard of review when a party having the burden of proof on the question
attacks the jury's refusal to find the affirmative. See Croucher v. Croucher, 660 S.W.2d 55, 58
(Tex. 1983). A complaint that the finding is against the great weight and preponderance of the
evidence will be reviewed in light of the entire record to determine whether it was clearly wrong
or manifestly unjust. See Traylor v. Goulding, 497 S.W.2d 944, 945 (Tex. 1973). Furthermore,
the fact-finder is the judge of the credibility of the witnesses and the weight to be given their
testimony. Carson v. Kee, 677 S.W.2d 283, 284 (Tex. App.âFort Worth 1984, no writ).
FACTS
Â Â Â Â Â Â September 4, 1988
Â Â Â Â Â Â Dr. Key was the attending physician at the emergency room. The medical records reflect that
Russell had "right quadrant pain going into both arms-also diaphoretic-stomach bloating-lots of
gas-running a temperature also-short of breath." Dr. Key recognized that the symptoms suggested
heart problems and ordered a cardiac-enzymes analysis and an electrocardiogram. Dr. Murphy
analyzed the results of the electrocardiogram.
Â Â Â Â Â Â Dr. Key gave the following testimony. He told the Alts that Russell had some heart damage
and recommended hospitalization for further testing. Although he suspected a heart problem, Dr.
Key never: (1) told the Alts that unstable angina was a potential diagnosis; (2) explained the
treatments available in the hospital; or (3) informed the Alts that Russell was at risk of having a
heart attack or even sudden death.
Â Â Â Â Â Â The Alts said they could not afford hospitalization and did not have insurance that would
cover the costs. They then asked for an alternative. Dr. Key, who emphasized that he felt Russell
should be in the hospital, prescribed several medications and told Russell to come to his clinic in
forty-eight to seventy-two hours. 
Â Â Â Â Â Â Russell Alt was feeling ill enough to cause him to seek emergency medical attention on
September 4. Yet, despite the doctor's recommendation, he refused hospitalization. Jewell, a
pharmacist, recognized one of the medications prescribed as a medication typically given for
"heart pain." She also admitted that Russell smoked approximately two packs of cigarettes a day
and that she was familiar with warnings that smoking may cause heart disease.
Â Â Â Â Â Â Dr. Shoultz, a Waco-area physician specializing in cardiovascular diseases, reviewed Russell's
medical records and testified that the records indicate that Dr. Key recommended hospitalization
on September 4. He also claimed that Dr. Key provided adequate information concerning the
course of the treatment suggested and noted that a doctor has to be careful what to "unload" on
a patient with potential heart problems, although he did admit that "the more information you can
give them, the better off they are." Dr. Shoultz testified that Dr. Key's treatment of Russell was
reasonable and within the applicable standard of care. 
Â Â Â Â Â Â Dr. Murphy, Dr. Key's partner, admitted that the standard of care when unstable angina is
suspected is hospitalization for treatment and that a patient should be told if his condition is
immediately life threatening.
Â Â Â Â Â Â Dr. Dittrich, from California, claimed that readily available forms of treatment for unstable
angina exist in a hospital. Dr. Key, he alleged, did not meet the appropriate standard of care
because he failed to hospitalize Russell. Dr. Dittrich further testified that when Russell initially
refused hospitalization, Dr. Key should have described "exactly" what could happen as a result.
Â Â Â Â Â Â Dr. Hellstern, a Dallas physician, testified that when Russell refused hospitalization Dr. Key
should have explained all the possible consequences. He also said that accepting Russell's decision
to refuse hospitalization, without explaining the possible consequences, was below the standard
of care.
Â Â Â Â Â Â We find that some evidence supports the refusal to find that, with respect to Russell's death,
Dr. Key was negligent on September 4. See McGalliard, 722 S.W.2d at 696. Furthermore, based
on the record as a whole, that refusal to find was not clearly wrong or manifestly unjust. See
Traylor, 497 S.W.2d at 945. The jury could have chosen to accept Dr. Key's and Dr. Shoultz's
testimony or to believe that the Alts' negligence, when they refused hospitalization after seeking
emergency medical treatment for symptoms commonly associated with a heart problem, negated
any negligence on the part of Dr. Key. See Carson, 677 S.W.2d at 284. Points one and two are
overruled.
September 6, 1988
Â Â Â Â Â Â Russell reported to Dr. Key's clinic on September 6 and claimed to be feeling better. Dr. Key
ordered another electrocardiogram, which showed no change from the September 4
electrocardiogram. He did not (1) tell the Alts that unstable angina was still a potential diagnosis,
(2) explain the treatments available in the hospital, (3) inform the Alts that Russell was at risk of
having a heart attack or even sudden death, or (4) recommend hospitalization.
Â Â Â Â Â Â Dr. Shoultz testified that, in light of the patient's claim that he was feeling better, Dr. Key's
actions were reasonable. Dr. Dittrich and Dr. Hellstern stated, however, that the
electrocardiogram on September 6 indicated that Russell had taken a "turn for the worse." Thus,
they claimed that not recommending hospitalization at this time constituted a failure to meet the
appropriate standard of care.
Â Â Â Â Â Â We find some evidence to support the refusal to find that, with respect to Russell's death, Dr.
Key was negligent on September 6. See McGalliard, 722 S.W.2d at 696. Furthermore, based on
the record as a whole, that refusal to find was not clearly wrong or manifestly unjust. See
Traylor, 497 S.W.2d at 945. The jury could have believed Dr. Key's testimony that Russell, who
claimed to be feeling better, appeared better and logically concluded that he would have refused
hospitalization at this point. See Carson, 677 S.W.2d at 284. We overrule points three and four.
September 8, 1988
Â Â Â Â Â Â Early that morning, Jewell called Dr. Key's office because Russell's condition had worsened. 
Dr. Key returned the call around noon. Jewell again called Dr. Key at approximately 6:30
P.M.and informed him that Russell was pale, cold, sweaty, and had chest pain. Dr. Key
recommended hospitalization. 
Â Â Â Â Â Â Later, Jewell called Dr. Key at his home and again repeated Russell's symptoms. Dr. Key
recommended that she take him to the emergency room. When Jewell said that Russell was to
weak to go to the hospital, Dr. Key suggested an ambulance.
Â Â Â Â Â Â At this time, Jewell lost faith in Dr. Key and called a friend about finding another doctor. 
Jewell got the friend's answering machine and, by the time the call was returned, Russell had died.
Â Â Â Â Â Â All points have been overruled and we affirm the judgment.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â BOB L. THOMAS
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Chief Justice

Before Chief Justice Thomas,
Â Â Â Â Â Â Â Â Â Â Justice Cummings, and
Â Â Â Â Â Â Â Â Â Â Justice Vance
Affirmed
Opinion delivered and filed May 27, 1992
Do not publish



an
style='font-family:"CG Times"'>Appellants four issues are: (1) whether the
probate court erred in concluding that the gun collection was among the
contents of the homeÂ; (2) whether the probate court erred in denying
Appellants recovery of their attorneyÂs fees; (3) whether the probate court
erred in awarding Merrill Lynch attorneyÂs fees; and (4) whether the probate
court erred in awarding Toni attorneyÂs fees.

Analysis

The Gun Collection

Regarding AppellantsÂ issue on the gun
collection, Merrill Lynch prefaces its response with an assertion that
Appellants have waived or not preserved their complaint because they did not
seek in the probate court the relief that they now seek in this appeal.Â 
Merrill Lynch correctly notes that itÂnot AppellantsÂpled claims for
declaratory relief and constructive trust relating to the gun collection.Â 
Appellants did not sue Merrill Lynch or Toni for return of the gun collection
to the estate by imposition of a constructive trust or for a declaratory
judgment on the ownership of the gun collection.Â  While they did plead in the
probate court that Merrill Lynch had improperly transferred the gun collection
to Toni in breach of its fiduciary and statutory (Probate Code section 233)
duties, Appellants sought only money damages for these alleged breaches and
Merrill LynchÂs removal and fee disgorgement.Â  Appellants lost on these claims
in the trial court and have not appealed these adverse rulings.Â  

In their first issue, Appellants are indirectly
attempting to do on appeal what the willÂs no-derivative action and in terrorem
clauses prohibit them from doing directly[9]
and what they did notÂand could notÂdo in the probate court.Â  And we agree with
Merrill Lynch that it is axiomatic that a party cannot complain on appeal about
a trial courtÂs failure to award relief when the party never pled for that
relief in the trial court.[10]Â 
A claim, issue, or allegation may not be raised for the first time on appeal.Â  Adams v. First NatÂl Bank, 154 S.W.3d 859, 871 (Tex. App.ÂDallas 2005, no
pet. h.) (ÂA claim that was not presented to the trial court cannot be
considered on appeal.Â); Carrizales v. Tex. DepÂt Prot. & Reg. Servs.,
5 S.W.3d 922, 925 (Tex. App.ÂAustin 1999, pet. denied) (ÂAs a rule, a party may not raise an issue, even a constitutional
claim, for the first time on appeal.Â); General AssÂn Branch
Davidian Seventh Day Adventist v. McLennan County Appraisal Dist., 715
S.W.2d 391, 393 (Tex. App.ÂWaco 1986, no writ) (issue may not be raised for
first time on appeal); see also California DepÂt of Mental Hygiene v. Bank
of the Southwest, N.A., 354 S.W.2d 576, 581 (Tex. 1962) (ÂAn allegation
raising this contention is not contained in petitionerÂs pleadings and was not
raised in the trial court.Â  The issue cannot be raised for the first time on
appeal.Â).

Appellants plainly did not plead a cause of
action for return of the gun collection or for declaratory relief regarding the
gun collection.Â  We thus hold that Appellants have not preserved their
complaint for appeal and overrule their first issue.Â  Tex. R. App. P. 33.1(a).

AppellantsÂ AttorneyÂs Fees

Section 245 of the Probate Code provides for the
recovery of reasonable attorneyÂs fees incurred in obtaining compliance
regarding any statutory duty that the personal representative has neglected.Â  Tex. Prob. Code Ann. Â§ 245 (Vernon Supp. 2004-05).Â  Arguing that because the probate court imposed a constructive trust
on five of the twelve categories of contested property as a result of Merrill
LynchÂs alleged neglect, Appellants in their second issue complain that the
trial court abused its discretion in refusing to award them their attorneyÂs
fees.

An appellate court reviews a trial courtÂs
decision on the award of attorneyÂs fees for an abuse of discretion.Â  Bocquet
v. Herring, 972 S.W.2d 19, 21 (Tex. 1998).Â  ÂWhether to award
attorney's fees, and to which party, is a decision that is solely within the
trial court's discretion and will not be reversed absent a clear abuse of that
discretion.ÂÂ  Sammons v. Elder, 940 S.W.2d 276, 284 (Tex. App.ÂWaco
1997, writ denied).Â  A trial court abuses its discretion when it acts
Âwithout reference to any guiding rules or principles,Â or stated another way,
when the trial court acts in an arbitrary and unreasonable manner.Â  City of
San Benito v. Rio Grande Valley Gas Co., 109 S.W.3d 750, 757 (Tex. 2003) (quoting Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 242 (Tex. 1985)).Â  An abuse of discretion does not occur when a trial court bases its decision
on conflicting evidence.Â  Goode v. Shoukfeh, 943 S.W.2d 441, 446 (Tex. 1997); Davis v. Huey, 571 S.W.2d 859, 862 (Tex. 1978).

The probate court specifically concluded that
Merrill Lynch did not fail to use due diligence in recovering property
belonging to the estate.Â  And the probate court noted that on the five times
that it disagreed with Merrill Lynch on the categorization of property as
estate property or Âcontents of the home,Â those disagreements were within the
zone of reasonable disagreement and amounted to approximately only 7% of the
value of the entire estate.Â  Merrill Lynch adds that it was not Appellants, but
Merrill Lynch, who sued for a constructive trust and for declaratory relief on
the contested property.Â  Additionally, in its decision to deny Appellants
recovery of their attorneyÂs fees, the probate court emphasized that Appellants
had lost on their claims to remove Merrill Lynch and to disgorge its executorÂs
fee.Â  On the other hand, the probate court found that in some instances Merrill
LynchÂs conduct deviated from the ordinary standard of care and in some
instances may have been inadvertent, but the conduct did not rise to the level
of willful, malicious, or bad-faith conduct.

Based on the above and on the probate courtÂs
extensive and careful consideration of all the evidence and claims in this
case, we cannot say that the probate court abused its discretion in refusing to
award Appellants attorneyÂs fees.Â  AppellantsÂ second issue is overruled.

Merrill LynchÂs AttorneyÂs Fees

AppellantsÂ third issue challenges the probate
courtÂs award of attorneyÂs fees to Merrill Lynch.Â  The probate court found
that Merrill Lynch defended AppellantsÂ removal action in good faith and was
entitled to recover its attorneyÂs fees under section 149C(c) of the Probate
Code.Â  That section permits an independent executor to recover necessary
expenses, including attorneyÂs fees, if it defends an action for removal in
good faith, Âwhether successful or not.ÂÂ  Tex.
Prob. Code Ann. Â§ 149C(c) (Vernon 2003).Â  Â[A]n executor acts in good
faith when [it] subjectively believes [its] defense is viable, if that belief
if reasonable in light of existing law.ÂÂ  Lee v. Lee, 47 S.W.3d 767, 795
(Tex. App.ÂHouston [14th Dist.] 2001, pet. denied).

Merrill Lynch prevailed on AppellantsÂ claim to
remove it as independent executor for alleged gross misconduct or gross
mismanagement.Â  Appellants have not appealed the probate courtÂs ruling on their
removal claim.Â  AppellantsÂ brief points out several instances of Merrill
LynchÂs conduct that served as the basis for their removal claim, but those
instances do not pertain to Merrill LynchÂs defense of the removal action in
good faith.Â  Moreover, Appellants do not point to any actual harm that they
suffered, and the probate court specifically found that the estate suffered no
actual harm or damages from Merrill LynchÂs incorrect categorization of some of
the contested property.

The probate court did take issue with the
reasonableness of Merrill LynchÂs interpretation that the phrase Âcontents of
the homeÂ included Âpersonal property wherever located,Â but in finding that
Merrill Lynch defended the action in good faith, the court noted that the
estate was not harmed and again that Merrill LynchÂs disagreements were
reasonable. The probate court did not abuse its discretion in awarding Merrill
Lynch attorneyÂs fees.Â  We overrule AppellantsÂ third issue.

ToniÂs AttorneyÂs Fees

Finally, in their fourth issue, Appellants complain
of the probate courtÂs award of attorneyÂs fees to Toni, recoverable from
Appellants.Â  They assert that the probate court abused its discretion in
granting Toni leave to file a trial amendment, that no legal basis for the award
exists, and that Toni did not substantially prevail.

In AppellantsÂ earlier, superseded petitions,
they specifically sued for declaratory relief on the terms of the will and the
marital agreement, alleging that Toni had forfeited her benefits under the will
because of her alleged violations of the in terrorem clause.Â  In
response to AppellantsÂ suit, Merrill Lynch filed a counterclaim, adding Toni
as a third-party defendant and seeking declaratory relief on the property being
contested by Appellants.

In her response to AppellantsÂ request for
disclosure, Toni stated that she was seeking Ârecovery of her reasonable and
necessary attorneyÂs fees pursuant to the action for declaratory judgment.ÂÂ  She
identified her attorney as an expert who would testify on attorneyÂs fees.Â  At the
time of trial, ToniÂs amended answer requested an award of attorneyÂs fees; she
had not made a claim for affirmative relief.Â  She thus filed a motion for leave
to file a trial amendment to allege a claim for attorneyÂs fees, and the
probate court granted Toni leave.

Texas Rule of Civil Procedure 66 allows a party
to seek leave to file a trial amendment to its pleading if no prejudice or
surprise is shown by the opponent.Â  Tex.
R. Civ. P. 66; State Bar v. Kilpatrick, 874 S.W.2d 656, 658 (Tex. 1994).Â  Because of ToniÂs response to AppellantsÂ request for disclosure, the probate court
found that Appellants could not seriously object to her proposed trial
amendment on grounds of surprise or prejudice.Â  We agree with the probate court
and hold that it did not abuse its discretion in allowing the trial amendment.

The probate court found that AppellantsÂ and
Merrill LynchÂs live pleadings implicitly sought declaratory relief.Â  See
Edwards Aquifer Auth. v. Bragg, 21 S.W.3d 375, 381 (Tex. App.ÂSan Antonio
2002) (court has discretion to construe pleading as containing implicit request
for declaratory judgment), affÂd, 71 S.W.3d 729 (Tex. 2002).Â  We agree.Â 
And when one claimant has invoked the declaratory judgment statute, the other
party may plead for and recover attorneyÂs fees Âas are equitable and just.ÂÂ  Tex. Civ. Prac. & Rem. Code Ann. Â§
37.009 (Vernon 1997); Spiller v. Spiller, 901 S.W.2d 553, 560 (Tex.
App.ÂSan Antonio 1995, writ denied).

While it is true, as Appellants claim, that
neither they nor Toni had direct claims against each other at trial, it is
undeniably true that Appellants and Toni were adverse parties.Â  Furthermore, Âthe award of attorney's fees in declaratory judgment actions is
clearly within the trial court's discretion and is not dependent on a finding
that a party Âsubstantially prevailed.ÂÂÂ  Barshop v. Medina County Underground Water Conservation Dist., 925 S.W.2d 618, 637 (Tex. 1996).Â  The probate
court awarded Toni her attorneyÂs fees from Appellants, rather than from the
estate, because an award from the estate would have only diminished her income interest
in the trust.Â  We cannot say that the probate court abused its discretion, and
we overrule AppellantsÂ fourth issue.

Conclusion

Â Â Â Â Â Â Â Â Â  Having overruled AppellantsÂ four
issues, we affirm the probate courtÂs final judgment.Â  Because Appellants have
been unsuccessful in this appeal, Merrill Lynch is entitled to recover an
additional attorneyÂs fee of $15,000 from the estate, and Toni is entitled to
recover an additional attorneyÂs fee of $15,000 from Appellants.

Â 

Â 

Â 

Â 

BILL VANCE

Justice

Â 

Before
Chief Justice Gray,

Justice Vance, and

Justice Reyna

Â Â Â Â Â Â Â Â Â  (Chief
Justice Gray dissenting)

Affirmed

Opinion
delivered and filed August 31, 2005

[CV06]








Â 









Â Â Â  [1]Â Â Â Â Â Â  An
Âin terrorem clause,Â also called a no-contest clause, is a
Âtestamentary provision that threatens to dispossess any beneficiary who
challenges the terms of a will.ÂÂ  BlackÂs
Law Dictionary 1073 (8th ed. 2000).





Â Â Â  [2]Â Â Â Â Â Â  Those
eight vehicles were: two Ferrari road cars parked in their usual place in the
marital homeÂs garage; a 2002 Porsche that was usually parked in the garage but
was out for repairs; a personal-use Ford Explorer usually parked either at the
home or office; a personal-use Subaru parked at the office; a 2001 Porsche and
a 1995 Ferrari given to Toni as gifts; and ToniÂs personal Mercedes parked at
the home.

Â 





Â Â Â  [3]Â Â Â Â Â Â  Luhnau
had Toni sign a receipt and release dated October 31, 2002, pertaining to all
of EdÂs property that she had received:Â  the contents of the home, including a
gun collection and a watch collection; a 2001 Ferrari 360 Spider Modena; a 2000
Ferrari 550 Maranello; a 2002 Porsche 911 Turbo; a 1999 Ford Explorer; and a
2002 Subaru Impreza.





Â Â Â  [4]Â Â Â Â Â Â  At
the start of the trial, Appellants amended their pleading to remove the jewelry
and the watch collection as contested assets.Â  The probate court thus found
that the jewelry and the watch collection were not estate assets.





Â Â Â  [5]Â Â Â Â Â Â  Specifically,
the probate court granted Merrill LynchÂs motion for judgment without objection
by Appellants on their damage claims as to these three cars:Â  (1) the 2000
Ferrari 550 Maranello (whose debt exceeded its value and which had been
surrendered); (2) the 2001 Porsche 911 (whose debt exceeded its value); and (3)
the Mercedes ML 55-AMG, for which no title evidence was adduced and which Toni
claimed as her personal car.

Â 





Â Â Â  [6]Â Â Â Â Â Â  On
two grounds the probate court ruled against Appellants that all of EdÂs
personal property that could be Âcontents of the homeÂ passed to the estate:Â 
(1) applying section 4.005 of the Family Code, the will did not revoke Ed and
ToniÂs marital agreement; and (2) the marital agreement was not an invalid
testamentary transfer of EdÂs entire estate under section 450 of the
Probate Code.

Â 





Â Â Â  [7]Â Â Â Â Â Â  The
probate court found that Âcontents of the homeÂ was ambiguous, so it utilized
section 58 of the Probate Code in ruling on the cars. Â That section defines
ÂcontentsÂ as Âtangible personal property, other than titled personal property,
found inside of or on a specifically bequeathed or devised item.ÂÂ  Tex. Prob. Code Ann. Â§ 58(d)(1) (Vernon
2003).Â  And it defines Âtitled personal propertyÂ to include motor vehicles.Â  Id. Â§ 58(d)(2).

Â 





Â Â Â  [8]Â Â Â Â Â Â  Toni
testified that Ed had given the Explorer to his stepdaughter Nina (ToniÂs child
from a previous marriage) but that she could not drive it until she entered
college.Â  Because a rift developed between Ed and Nina, in his codicil Ed
deleted a $100,000 bequest to Nina and deleted practically every reference to
Nina.Â  The probate court thus concluded that Ed never ÂdeliveredÂ the Explorer
to Nina as a gift.





Â Â Â  [9]Â Â Â Â Â Â  The
probate court found that Appellants had violated the no-derivative action
clause in part but nonetheless did not forfeit AppellantsÂ bequests under the
will.Â  Neither Appellants nor Merrill Lynch appeal this ruling.

Â 





Â Â Â  [10]Â Â Â Â Â  AppellantsÂ
general prayer for relief in their petition is insufficient to cure the absence
of the specific claim and relief that they are seeking for the first time on
appeal; a general prayer for relief must be consistent with the claims in the
petition.Â  See Kissman v. Bendix Home Sys., Inc., 587 S.W.2d 675, 677
(Tex. 1979) (ÂOnly the relief consistent with the theory of the claim reflected
in the petition may be granted under a general prayer.Â); Stoner
v. Thompson, 578 S.W.2d 679, 684 (Tex. 1979) (general prayer for relief
cannot
Âenlarge a pleading to the extent that it embraces an entirely different cause
of action for which fair notice does not exist.Â).