NO. 07-04-0486-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

DECEMBER 27, 2005

_____

DUKE ENERGY FIELD SERVICES, L.P., APPELLANT

V.

GLENDELL MEYER, ROSE MARIE MEYER, AND EDDITH M. HINKLE, APPELLEES

_____

FROM THE 31ST DISTRICT COURT OF LIPSCOMB COUNTY;

NO. 02-01-3706; HONORABLE STEVEN EMMERT, JUDGE

_____

**OPINION**

Before QUINN, C.J., and REAVIS and CAMPBELL, JJ.

Duke Energy Field Services, L. P. presents five issues complaining of the judgment rendered based upon jury findings that Eddith M. Hinkle recover $77,473.53 plus pre-judgment interest and attorney's fees against Duke.[1] Duke does not challenge the award

_____

[1]The judgment signed July 28, 2004, did not make any award to Glendell Meyer or Rose Marie Meyer.

to Hinkle that she recover the sum of $1,000 for damages to her land and related attorney's fees in the amount of $3,186. Presenting issues one and two, Duke challenges the legal and factual sufficiency of the evidence to support a finding of causation. By issue three, Duke challenges the legal sufficiency of the evidence to support a finding that Duke breached its duty of ordinary care, and by issue four, Duke contends the trial court erred by submitting an instruction on the inference of *res ipsa loquitur.* By the fifth issue, Duke challenges the award of attorney's fees to the Meyers due to the absence of a contract. By two cross-points, Hinkle contends the trial court erred in (1) not submitting the nuisance claim and (2) refusing to submit the trespass claim.

On May 21, 1970, Hinkle's predecessors in title, Harold Perry and Alice Perry, as grantors, executed an easement granting rights to construct, operate, maintain, and repair a pipeline upon the subject lands in Lipscomb County to Phillips Petroleum Company.[2] Among other things, the easement provided that Phillips Petroleum would "pay grantors for any other or additional damages to growing crops, grass, fences, improvements and livestock which may result of the exercise of the rights" therein granted. By written lease dated November 28, 1994, Hinkle's predecessors, via the family trust, made a surface lease for agricultural purposes to Glendell Meyer for a term of two years. Upon distribution of the land, Hinkle orally continued the 1994 grass lease with Meyer who placed 45 cows on the 928 acre pasture, the leased premises.

---

[2]At the time of trial, Duke was the assignee of record of the May 21, 1970 easement.

2

On the morning of January 10, 2001, when Meyer went to the pasture to feed hay, he saw the cows in a circle gathered around a leak area in the pasture. The cows were standing in a black-green oily product, and he saw them licking and rubbing their noses in the oily product. Meyer moved the cows to another portion of the pasture and later that day, at his request, an employee of Duke placed some temporary fencing around the leak site. The cows in the pasture were bred to start calving around March 1. When Meyer inspected the cows the following morning, he found some cows heaving and some had aborted calves, but he could not find the aborted calves. On January 2, 2002, Meyer and Hinkle filed suit for damages to the cows and surface damages alleging multiple grounds for recovery.

On March 11, 2002, the Meyers assigned their cause of action against Duke pursuant to section 12.014 of the Texas Property Code. At the conclusion of the evidence, the trial court submitted the case to the jury. As material to this appeal, the charge presented questions to the jury of (2) Duke's negligence and proximate cause and (3)(b) Duke's failure to comply with the agreement and proximate cause. In connection with the negligence question, the trial court submitted an instruction regarding *res ipsa loquitur.* In addition, the trial court instructed the jury as follows:

> A fact may be established by direct evidence or by circumstantial evidence, or both. A fact is established by direct evidence when proved by documentary evidence or by witnesses who saw the act done or heard the words spoken. A fact is established by circumstantial evidence when it may be fairly and reasonably inferred from other facts proved.

Duke did not object to the instruction regarding circumstantial evidence.

Answers favorable to Hinkle being returned, the court then rendered its judgment on July 28, 2004. By its partial motion for new trial, Duke contended (1) the evidence was factually insufficient that its negligence or breach of contract caused any damage to the cows, and (2) the evidence was factually insufficient that the pipeline leak resulted from the negligence of Duke. After its partial motion for new trial was overruled, Duke timely filed its notice of appeal. Regarding its legal and factual sufficiency of the evidence claims, Duke does not present an issue contending the trial court erred in admitting the opinion of Meyer or that the nature of the injuries to the cows were such that expert testimony was required to establish causation of the alleged injuries to the cows.[3]

By its answer to question two, the jury found that Duke's negligence was a proximate cause of the injury to the cows. Then, by its answer to question 3(b) the jury found that Duke's failure to comply with the easement agreement was also a proximate cause of damages to the cows. By its first and second issues, Duke contends the evidence was legally and factually insufficient to support a finding of causation.

---

[3] *Cf.* Purina Mills, Inc. v. Odell, 948 S.W.2d 927, 936 (Tex.App.–Texarkana 1997, writ denied); Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex. 1995).

4

## Standard of Review

In our examination of the contentions of a lack of evidence, we must review the entire record to determine whether there is more than a scintilla of evidence to support the findings, and if so, the findings will be upheld. Stedman v. Georgetown Sav. & Loan Ass'n, 595 S.W.2d 486, 488 (Tex. 1979); Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965). Evidence is merely a scintilla when it is so weak as to do nothing more than create a mere surmise or suspicion of a fact. Seideneck v. Cal Bayreuther Associates, 451 S.W.2d 752, 755 (Tex. 1970). We must consider only the evidence and the reasonable inferences which can be drawn therefrom in their most favorable light to support the jury's findings while disregarding all contrary evidence and inferences. Browning-Ferris, Inc. v. Reyna, 865 S.W.2d 925, 928 (Tex. 1993).

If there is some evidence to support the findings, we must then determine its factual sufficiency. In so doing, we must consider and weigh all the evidence and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986); Dyson v. Olin Corp., 692 S.W.2d 456, 457 (Tex. 1985). Each of the sufficiency complaints herein will be evaluated utilizing these standards of review.

By its first issue, Duke contends the evidence was legally insufficient to support the jury findings of causation. We disagree.

5

Meyer had placed cattle on the leased pasture for several years before the leak was discovered. Evidence of the pipeline leak on January 10, 2001 of oil or other petroleum solution in the pasture where Meyer's cows were located is undisputed. Meyer testified that 100 per cent of his cows delivered calves the first year he owned them and they were bred to start calving March 1, 2001, or thereafter. Also, he testified that after he saw the cows licking and smelling the oil at the leak site, one cow aborted her calf the next day and that over a period of time, 30 cows aborted or had dead calves and the next year, 17 of 39 remaining cows were barren or had calves that died. Meyer also testified that, in his opinion, the calving problem was caused by the cows ingesting the oil or other liquid at the leak site and he did not know of any other reason that could have caused the calving problems.[4] Doctor Skaggs, DVM and another veterinarian testified that, among other possible known factors, drinking oil can cause cows to abort their calves.

Reviewing this evidence in light of the circumstantial evidence instruction and considering the evidence favorable to the verdict only, an inference of causation is presented by the objective facts. Duke argues that expert testimony is necessary to establish causation unless general experience and common sense will enable a layman to fairly determine the causal relationship between the occurrence and the injury. Because Duke did not object to the testimony of Meyer, and this contention was not otherwise presented to the trial court, it may not be considered for the first time on appeal. State of

---

[4]Duke did not present any objection grounded on Texas Rules of Evidence 701, 702, or otherwise.

6

Cal. Dept. of Mental Hygiene v. Bank of the S.W. Nat. Ass'n, 163 Tex. 314, 354 S.W.2d 576, 581 (1962). Then, citing E. I. du Pont de Nemours and Co., Inc. v. Robinson, 923 S.W.2d 549, 556 (Tex. 1995), Duke, however, argues the evidence is not sufficiently relevant and reliable to meet the requirements of Rule 702 of the Texas Rules of Evidence. However, *Robinson* is not controlling here because it was concerned with the admissibility of evidence which is not at issue here. Moreover, by its failure to object to Meyer's opinion as being unreliable, Duke waived any contention that the opinion was unreliable. *See* Guadalupe-Blanco River Authority v. Kraft, 77 S.W.3d 805, 807 (Tex. 2002); Texas Dept. of Human Services v. Green, 855 S.W.2d 136,149 (Tex.App.–Austin 1993, writ denied). Also, Duke's failure to request a limiting instruction regarding the causation opinion of Meyer per Rule 105(a) of the Texas Rules of Evidence, it waived its complaint to general admission of the evidence. Birchfield v. Texarkana Memorial Hosp., 747 S.W.2d 361, 365 (Tex. 1987). Considering only the evidence and the reasonable inferences which can be drawn therefrom in their most favorable light to support the jury's findings and disregarding all contrary evidence and inferences, we conclude the evidence was legally sufficient to support the jury findings to question 2 and question 3(b). Accordingly, issue one is overruled.

By its second issue, Duke contends the evidence was factually insufficient to support a finding of causation. We agree.

7

Having found there is some evidence to support the findings, we now review and consider all of the evidence to determine if the verdict is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. In addition to the evidence mentioned above, in summary form, according to the record:

- Although Meyer saw the cows standing at the leak site while licking and sticking their noses in the surface, there is no evidence that the cows actually ingested oil; or if they did, the quantity of the oil ingested.

- Meyer guessed that five or six cows may have ingested oil but there was no evidence identifying which cows may have ingested oil.

- Dr. Skaggs and Dr. Halliburton testified there are numerous factors which can cause cows to abort calves, but there was no evidence showing the quantity of oil required to cause a cow to abort her calf.

- Dr. Skaggs and Dr. Halliburton testified that numerous potential causes of the abortions were not ruled out by testing.

- Lab results were inclusive for oil exposure.

- Afterbirth of cows was not tested for traces of petroleum.

- Lab results of the three cows tested did not indicate oil exposure and no oil found in stool samples.

- Dr. Skaggs testified the initial effect of oil ingestion causes cattle to stumble and slobber and have muscle seizures and spasms; however there was no evidence of this behavior.

- Blood test revealed the cows were low in protein and magnesium and other minerals. Results showed poor nutrition which could have been a factor.

- Dr. Skaggs admitted that based on the lab results, oil exposure would be impossible to prove.

- Dr. Halliburton concluded that to a reasonable veterinary certainty, he could not testify it was more likely than not the Meyer's cows aborted calves or died due to the oil ingestion.

8

Hinkle was not required to establish causation by a scientific certainty or exclude every other possibility. *Purina Mills*, 948 S.W.2d at 936. However, because the evidence suggests that several conditions or events could have caused the cows to abort their calves and where, as here, circumstances are consistent with either of two or more facts and nothing shows that one is more probable than the other, neither fact may be inferred. *See* Roth v. FFP Operating Partners, L.P., 994 S.W.2d 190, 197 (Tex.App.– Amarillo 1999, pet. denied). Considering all of the evidence as a whole, we find the evidence factually insufficient to support a finding that in reasonable probability the ingestion of the oil by the cows caused injuries to them. Accordingly, Duke's second issue is sustained.

Having sustained Duke's second issue and concluded that the judgment of the trial court must be reversed and the cause remanded, we do not address the remaining issues and cross-points because further review is unnecessary, Tex. R. App. P. 47.1, and could amount to an advisory opinion. Valley Baptist Medical Center v. Gonzalez, 33 S.W.3d 821, 822 (Tex. 2000).

Accordingly, we affirm that part of the judgment that Eddith M. Hinkle recover the sum of $1,000 for damages to her land and related attorney's fees in the amount of $3,186 from Duke; otherwise, in all other respects, the judgment is reversed and the cause is remanded to the trial court for further proceedings.

Don H. Reavis
Justice

9