**SOUTHWESTERN BELL TELEPHONE COMPANY, Appellant,**

v.

**COMMERCIAL METALS COMPANY OF HOUSTON et al., Appellees.**

**No. 14529.**

Court of Civil Appeals of Texas.

Houston.

April 1, 1965.

Ford W. Hall, Houston, and James M. Shatto, St. Louis, Mo., for appellant.

Bernard L. Chanon, Houston, for appellee, Scrap, Inc. of Texas.

Joel W. Cook and Joe Corman, Houston, for appellee, Commercial Metals Co. of Houston.

BELL, Chief Justice.

Appellee, Commercial Metals Company of Houston, herein called Commercial, recovered judgment against appellant in the amount of $960.37, this being the reasonable value of copper wire allegedly belonging to Commercial and allegedly converted by appellant. Appellee, Scrap, Inc. of Texas, herein called Scrap, recovered judgment against Commercial for $560.44. There is no complaint of the judgment against Commercial unless we should reverse the judgment against appellant. Appellant, however, appeals from the judgment against it.

It appears that sometime in 1959, Scrap bought from Buddy Dodson and A. K. Murphy, Jr., certain scrap metal including some #104 hard drawn copper wire. The wire was sold in August, 1959 to Commercial. The individuals who sold to Scrap were charged in Harris County with theft of the wire. Appellant claimed the wire had been stolen from it. On January 15, 1960, the wire was taken by the Sheriff of Harris County and delivered to appellant. Appellant was to hold the wire for use as evidence at the trial of the criminal cases. The two named individuals were indicted for felony theft but their cases were dismissed on November 29, 1962.

When the wire was taken from Commercial by the Sheriff, Commercial demanded repayment by Scrap of the purchase price of $960.37. This was refused, but on October 16, 1961, Scrap and Commercial entered into an agreement which recited that Scrap had sold to Commercial a quantity of copper allegedly stolen from appellant and that a suit (meaning criminal prosecution) had been pending a long time but had not been disposed of. It also recited the sheriff had seized the property and had not returned it to Commercial. It

was then recited that if there should be no conviction and the alleged thief should go free, Scrap agreed the full amount of copper would be returned to Commercial and Commercial would credit Scrap with the full value of the copper. If there was a conviction Scrap would fully reimburse Commercial for the copper taken by the Sheriff.

On May 7, 1963, Scrap sued Commercial for $700.00 plus $250.00 attorney's fees. The suit was on the above agreement. There were allegations about the purchase from Dodson and Murphy, the sale to Commercial and the agreement to credit Scrap if the defendants were not convicted. Allegation was that there had not been conviction but the cases were dismissed. Scrap alleged it had reimbursed Commercial $700.00 and was entitled to what it had paid.

On June 17, 1963, Commercial answered with a general denial and a special plea that Scrap had expressly or impliedly warranted it had title when it sold the copper. Too, it pled the agreement with Scrap required that the copper be returned before it was obligated to credit Scrap and that the copper had not been returned.

By way of cross-action Commercial pled Scrap owed it on account $399.93. By a third-party action Commercial interpled Mr. Kern, the Sheriff of Harris County, and appellant. In the third-party petition Commercial alleged that on January 15, 1960, deputies of Kern, aided and abetted by appellant, demanded of Commercial "the property described in Plaintiff's petition." The property was surrendered to the deputy sheriff "pending its use as evidence in the criminal action" against Dodson and Murphy. Then it is alleged that the prosecutions were dismissed November 29, 1962, but appellant and the sheriff had failed and refused to return the property to Commercial. Too, it pled "trespass ab initio."

Appellant answered with a general denial, a plea of the two year statute of limi-

tation, and a special plea asserting ownership of the wire that had in 1959 been stolen from it.

The Sheriff filed an answer denying the allegations and specially pleading he was acting in the scope of his authority and was performing his statutory duty in retrieving the property and turning it over to appellant when appellant's representatives properly identified the wire. He asked judgment over against appellant if he were held liable. However, judgment was favorable to the Sheriff.

Trial was before the court without a jury. The court filed his findings of fact and conclusions of law. We will notice only such findings and conclusions as are material to some questions raised on this appeal.

1. Immediately prior to the sale of the 13 drums of copper wire in August, 1959 by Scrap to Commercial the wire was in the exclusive and undisputed possession of Scrap and exclusive and undisputed possession was delivered by Scrap to Commercial at the time of sale.

2. On January 15, 1960, the Sheriff, through his deputies, seized the wire and the drums on the representation of appellant that the same had been stolen from it by Dodson and Murphy, who were charged with its theft, and that shortly after such seizure the Sheriff caused the material to be delivered to appellant for the purpose of keeping said material available as evidence pending trial of the criminal case.

3. On November 29, 1962, the prosecution against Dodson and Murphy was dismissed and there has been no conviction growing out of the alleged theft of the wire.

4. Appellant has retained possession and control of the property and has refused on demand to return the wire to Commercial.

5. Appellant was not the owner of the wire and drums seized by the Sheriff.

The court made the following conclusions of law, which are material to this appeal:

1. The possession of the Sheriff and appellant was, under Articles 933 to 936, Code of Criminal Procedure, lawful until November 29, 1962, when the criminal prosecution was dismissed and, therefore, the conversion took place within two years of the filing of the third party petition in June 1963.

2. The receipts given by the Sheriff and appellant constituted written contracts to return the property to the true owners so the four year statute of limitation, and not the two year statute, was applicable.

3. There was no proof by a preponderance of the evidence that the material was the property of appellant and was stolen from it.

4. Commercial was entitled to recover from appellant both on the theory of trespass and conversion.

Appellant's first complaint is that the court erred in holding that the two year statute of limitation did not bar recovery. Its contention is that the conversion, if there was a conversion, took place on January 15, 1960, when appellant took possession of the wire. The trial court, as above noted, found in effect that the Sheriff of Harris County seized the copper wire on the representation by appellant and that it had been stolen from appellant, and that possession was delivered to appellant by the Sheriff and that appellant was to hold the wire to be used in evidence on the trial of the criminal case against Dodson and Murphy. The court concluded the possession of the Sheriff and his nominee, appellant, was lawful until the dismissal of the criminal case on November 29, 1962, so the conversion took place within 2 years of the filing of the cross-action by Commercial.

We are of the view that the trial court could reach the conclusion that appellant

was not asserting ownership to the exclusion of Commercial until it refused to return the wire after the criminal case had been dismissed, but it could conclude appellant's possession was purely as nominee of the Sheriff who was holding possession for the sole purpose of making the wire available as evidence.

Mr. Stephenson, a Deputy Sheriff, who had been assigned to investigate the theft of wire, testified about the delivery of the wire. He signed a receipt which he gave to Commercial and it stated: "This wire has been held for Sheriff's Office as evidence in offense in Report No. 47647 and others." He, after the wire was identified by appellant's representative, was to meet appellant's representative at Commercial's place of business and appellant's representative was to have transportation. Appellant employed Carroll Construction Company to haul the wire to appellant's warehouse. Before the appointed time Carroll Construction picked the wire up. The shipping or delivery ticket issued by Commercial showed the wire was shipped to "Sheriff's Department, Harris County, Texas c/o Southwestern Bell Telephone Comp." The ticket was signed "For Southwestern Bell Telephone Comp., Carroll Construction Company, James L. Belton." This ticket was silent as to the purpose of delivery. However, the evidence showed that Mr. Stanley George, the special agent of appellant, later gave the Sheriff a receipt and was told the wire was to be held as evidence. George told other representatives that the wire was to be held as evidence. Mr. Stephenson testified the wire was very bulky. It consisted of 13 drums. The total weight was 3278 pounds. Stephenson, prior to delivery, had directed Commercial to "hold" the wire. He then demanded the wire be returned and stated to Commercial if it wasn't turned over to the "Harris County Sheriff's Office, * * * it would be concealing *stolen* property, and it would be treated as such." (emphasis supplied)

At no point does any representative of appellant deny that delivery was to it as the nominee of the Sheriff, to hold the wire as evidence. It is true that appellant's representative had identified the wire to the Sheriff as its wire that was allegedly stolen by Dodson and Murphy, who were then charged, and subsequently indicted for felony theft.

We held in the case of Reiner v. Marceau, Tex.Civ.App., 338 S.W.2d 285, no writ history, that under similar circumstances the holding of allegedly stolen property at the direction of law enforcement officers, by a person in possession was lawful under Article 933, Code of Criminal Procedure. Here the taking of possession by the Sheriff through his nominee, appellant, was lawful. We feel the court correctly concluded that appellant's possession was the Sheriff's possession. We also held in the Reiner case that after taking possession the Sheriff had the duty under Article 935, Code of Criminal Procedure, to within a reasonable time file a schedule of the property in the court having jurisdiction of the case, and we held that if he did not do so the owner was entitled on demand to a return of the property. Demand was made and upon refusal there was a conversion. It did not appear from satisfactory evidence that the alleged thief in that case had ever been indicted. In this case it was established that Dodson and Murphy were indicted and their case was not disposed of until November 29, 1962. No demand had been made by Commercial until after the criminal case was dismissed. We hold that the trial court did not err in holding the conversion did not occur until after demand on dismissal of the criminal case. Where the original possession is lawful the statute of limitation, in an action for conversion, does not commence to run until a demand for possession by a claimant and a refusal to return by one in lawful possession as a nominee of the Sheriff who is holding possession not for an alleged owner but for the purpose of using the property as evidence in a criminal case.

The court was in error in concluding that the receipts were written contracts and therefore the four year statute of limitation applied. They were not pled. There was no trial by consent by not objecting to the introduction of the receipts. They were admissible on a theory pled, that is, that the possession was, as above shown, lawful and the conversion did not take place until demand for possession was given. The result is an objection to their admissibility would have been unavailing. Too, the receipts contain no undertaking to return the property. The obligation to return, as to appellant, rests in parol because the testimony is that Mr. George was told to hold the property as evidence and Mr. George told other representatives to hold it for evidence.

Appellant says there was error in the trial court's holding that the property did not belong to it. The point of error, so we interpret it, is that the undisputed evidence is that the wire belonged to appellant. There is no point of error that the finding is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong.

We reach the conclusion there is evidence of probative force to support the trial court's finding.

The evidence shows that wire belonging to appellant was taken from a line between La Porte and Seabrook. The wire was missed in November, 1959. It was No. 104 hard drawn copper wire. The wire was cut by the taker by cutting it from between the telephone poles. Identification was made by telephone representatives who testified it was No. 104 wire of the kind used by appellant. Particularly appellant relies for identification on the sleeve used to splice two lengths of wire together. Among the various pieces of wire contained in the 13 drums they found something more than 10 sleeves. The 13 drums contained No. 1 copper wire that had been cut up.

No. 1 copper wire refers to the grade of wire and not its dimension. No. 104 refers to the size of the wire and means $104/1000$ of an inch. The peculiar roll of the sleeve used to join two strands of wire is relied on. There is evidence, however, though it was not without dispute, that Western Union used the same size and kind of copper wire. Western Electric furnishes wire to appellant, though manufacturers make it for Western Electric. Used wire is returned by appellant to Western Electric. What Western Electric then does with the wire is not shown. There is evidence that appellant is one of very few who use No. 104 wire. There is evidence from which the court could conclude the manufacturers of the wire sell to others than Western Electric. Too, a witness who purchased the wire when Dodson and Murphy sold to Scrap testified the wire was smooth No. 1 copper wire and had no sleeves splicing the wire such as appellant's representatives identified.

Commercial and Scrap sufficiently proved prior undisputed possession, as found by the trial court, which is sufficient to support an action for conversion as against one shown to have no right to the wire. Scrap proved its purchase from Dodson and Murphy and then sale to Commercial. Their possession was disturbed by appellant, who the trial court on evidence of probative force found to have no interest in the wire. Lee C. Moore & Co. v. Jarecki Mfg. Co., Tex.Civ.App., 82 S.W. 2d 1002; First National Bank of Colorado v. Brown, 85 Tex. 80, 23 S.W. 862.

Other related points raised by appellant have been examined by us and found to be without merit.

Affirmed.

WERLEIN, J., disqualified and not participating.