**William L. MORRISS, Individually and as Trustee for the Thomas A. Morriss Trust, Appellant,**

v.

**ENRON OIL & GAS COMPANY, Appellee.**

No. 04–95–00915–CV.

Court of Appeals of Texas, San Antonio.

May 14, 1997.

---

Lloyd A. Muennink, Austin, for Appellant.

Cary V. Sorensen, Kriste K. Sullivan, Stanley B. Broussard, Christopher W. Barnes, Britt K. Davis, Enron Litigation Unit, Houston, J. Jeffers Spencer, Enron Oil & Gas Company, Senior Counsel, Houston, for Appellee.

Before HARDBERGER, C.J., and GREEN and ANTONIO G. CANTU,[1] JJ.

## OPINION

ANTONIO G. CANTU, Justice (Assigned).

William L. Morriss, individually and as trustee for the Thomas A. Morriss Trust [Morriss], brought suit against Enron Oil & Gas Company [Enron] alleging causes of action for negligence, gross negligence, fraud, and conversion as a result of Enron's failure to make royalty payments to the proper party. The trial court granted Enron's Motion for Summary Judgment on the grounds that Morriss had failed to file his lawsuit before the applicable statute of limitations barred his claims.

We affirm.

### Procedural History of the Case

Morriss filed suit against Enron on December 22, 1993 alleging, in his Original Petition, that Enron had negligently made royalty payments contrary to the provisions in a division order which required that payments be made to him, individually and as trustee, and to Thomas A. Morriss, Jr., individually and as trustee, and not to "Morriss Brothers."

The petition then listed numerous allegations of alleged gross negligence said to have caused monetary damages exceeding $60,000. Morriss claimed the alleged mispayments occurred between June 10, 1987 and November 11, 1988.

---

1. Assigned to this case by the Chief Justice of the Supreme Court of Texas.

Enron answered on January 27, 1994 with a general denial and the affirmative defense of limitations. Two weeks later, on February 11, 1994, Enron filed its Motion for Summary Judgment based on the four year statute of limitations. TEX. CIV. PRAC. & REM.CODE ANN. § 16.004 (Vernon 1986).[2] The motion denominated Morriss's cause of action as an action for breach of contract and sought summary judgment on the pleadings alone. The motion was, therefore, not supported by any summary judgment evidence or affidavits. *See Alice Roofing & Sheet Metal Works v. Halleman,* 775 S.W.2d 869, 870 (Tex.App.—San Antonio 1989, no writ).

■ Enron's Motion for Summary Judgment was set for hearing on March 29, 1994. On March 22, 1994, Morriss filed his First Amended Original Petition, and once again alleged various instances of alleged negligence and gross negligence. Morriss also alleged a violation of a duty, arising from Enron's status as lessee/assignee under the division order, to exercise ordinary care in the payment of royalties. Moreover, Morriss asserted a cause of action for conversion, said to arise from the underlying allegations of mispayment. Morriss further asserted a demand and refusal date of September 10, 1992.[3] The damages alleged to have been sustained by virtue of the conversion were the same amount, in excess of $60,000. The amended petition also alleged fraud and prayed for exemplary damages. Contemporaneous with the filing of his First Amended Original Petition, Morriss filed his response to Enron's Motion for Summary Judgment.

In his response, Morriss pointed out that his causes of action were couched in terms of negligence, gross negligence, and conversion, and not in contract. Moreover, Morriss asserted the discovery rule as an impediment to Enron's limitations defense.

On March 29, 1994, Enron filed its objections to Morriss's amended petition with an accompanying motion to strike Morriss's First Amended Original Petition, alleging that the amended petition was filed six days before the scheduled hearing on the motion for summary judgment without first obtaining leave of court, as required by Rule 63 of the Texas Rules of Civil Procedure.[4] Enron further complained of the new causes of action being alleged in the amended petition. At a hearing conducted on the same day, the trial court overruled Enron's motion to strike and granted Morriss leave to amend his petition. No order setting Enron's Motion for Summary Judgment is apparent from the record; nevertheless, on April 25, 1994, the trial court granted a partial summary judgment, to wit:

\* \* \* \* \* \*

It is therefore ordered that summary judgment be and it is hereby granted in favor of the Defendant Enron Oil & Gas Company that William L. Morriss, Individually and as Trustee, take nothing on any claim that Enron Oil & Gas Company has breached any contractual obligation under any lease, division order, or transfer order by failing to pay royalty on production of oil or natural gas to William L. Morriss,

---

**2.** Section 16.004 in pertinent part provides:

(a) A person must bring suit on the following actions not later than four years after the day the cause of action accrues:

\* \* \* \* \* \*

(3) debt

\* \* \* \* \* \*

**3.** Where the original possession is lawful, the statute of limitations does not commence to run in an action for conversion until there is a demand for possession by a claimant and a refusal to return by one in lawful possession. *Southwestern Bell Tel. Co. v. Commercial Metals Co.,* 389 S.W.2d 116, 119 (Tex.Civ.App.—Houston 1965, no writ).

**4.** Rule 63 provides:

**Rule 63. Amendments and Responsive Pleadings**

Parties may amend their pleadings, respond to pleadings on file of other parties, file suggestions of death and make representative parties, and file such other pleas as they may desire by filing such pleas with the clerk at such time as not to operate as a surprise to the opposite party; provided, that any pleadings, responses or pleas offered for filing within seven days of the date of trial or thereafter, or after such time as may be ordered by the judge under Rule 166, shall be filed only after leave of the judge is obtained, which leave shall be granted by the judge unless there is a showing that such filing will operate as a surprise to the opposite party.

TEX.R. CIV. P. 63 (Vernon 1996).

either individually or as Trustee, for any period of production prior to December 22, 1989, being four years before this suit was filed, because all such contractual claims are barred by the four year statute of limitations.

This judgment is partial in that the claims of the Plaintiff William L. Morriss, individually and as Trustee which allege an entitlement to damages against Defendant Enron Oil & Gas Company based on theories of negligence, gross negligence, conversion, and fraud are not ruled upon but shall be addressed and resolved in the due course of this proceeding.

\* \* \* \* \* \*

Enron subsequently filed its Motion for Final Summary Judgment on October 26, 1994. Enron alleged that all of the remaining claims sounded in contract only and were, likewise, barred by the statue of limitations, even if they were to be considered torts, because "Morriss knew or should have known, in the exercise of reasonable diligence of the only event giving rise to his tort claims long before suit was filed in December 1993."

The summary judgment evidence attached to Enron's Motion for Final Summary Judgment consists of the following items:

(1) A letter from William L. Morriss and Thomas A. Morriss dated March 28, 1984 to Houston Natural Gas Oil Company, c/o Ted Bedford requesting that direct deposits be made to the First State Bank of Uvalde, Morriss Brothers Special Account # 72-10-800, on the following payee numbers:

Thomas A. Morriss—Payee # 4792, # 4784 and # 4782

William L. Morriss—Payee # 4791, # 4783 and # 4781;

(2) Cancelled endorsed checks payable to the First State Bank of Uvalde, Account Morriss Brothers # 72-10-800, dated 6-10-87, 7-10-87, 8-10-87, 9-10-87, 11-11-87, 12-14-87, 1-12-88, 2-12-88, and 3-11-88;

(3) A letter dated February 20, 1987 from Thomas A. Morriss to Enron Oil and Gas Company requesting that Enron mail his checks directly to him at the following address:

Morriss Brothers

Post Office Box 1490

Uvalde, Texas 78802-1490;

(4) Cancelled endorsed checks payable to Morriss Brothers dated 4-12-88, 5-12-88, 6-11-88, 7-11-88, 8-12-88, 9-12-88, 10-12-88, and 11-11-88;

(5) A memo dated September 10, 1992 from William L. Morriss to Robert McCommon regarding the royalty income due to William L. Morriss individually and as trustee for the period from March 26, 1987 through an unspecified date represented by a sale to American Exploration, Inc. of all wells in which Morriss had an interest;

(6) Copies of documents recorded in the Deed of Trust records of Sutton County, Texas, including a release of lien dated June 3, 1991 executed by the Resolution Trust Corporation acknowledging the discharge of certain debts and obligations of Thomas A. Morriss, Jr. and W.L. Morriss; and

(7) The unsigned and unexecuted affidavit of William L. Morriss regarding royalty payments allegedly mispaid, which contained the following statement:

I always believed until August, 1991, that all payments of royalty were being mailed to and applied to an outstanding loan balance at San Antonio Savings and Loan Association, Loan No. 21940.

On or about September 10, 1992, I notified the Defendant that they had been sending my royalty checks to an improper account. At that time I demanded that the Defendant return said royalty payments to me. The Defendant refused to return said royalty payments to me.

Enron's Motion for Final Summary Judgment was set for disposition on November 22, 1994. Morriss, however, filed his Motion for Continuance on November 14, 1994 complaining of lack of meaningful discovery. Additionally, he sought to disqualify counsel for Enron by a motion filed the same day. He also filed his response to Enron's Motion for

Final Summary Judgment, with a brief in support.

The response consisted primarily of complaints regarding Morriss's inability to conduct discovery and alleged unfairness in being subjected to summary judgment absent meaningful discovery. The response further incorporated certain responses by Enron to propounded Requests for Admission with general complaints and objections to individual items in Enron's exhibits attached to its Motion for Final Summary Judgment. Correspondence between counsel for both parties detailing problems in obtaining discovery was also attached to Morriss's response, together with Morriss's affidavit asserting the following:

\* \* \* \* \* \*

6. I always believed, until August, 1991, that all payments of my royalties were being mailed to and applied to an outstanding loan balance at San Antonio Savings and Loan Association, Loan No. 21940.
7. In August, 1991, I suspected that something was wrong with payment of my royalties by American Exploration Company when they sent me two division orders.
8. At that time I began to investigate the payment of my royalties by American Exploration Company.
9. I wrote a letter to Enron Oil & Gas Company on September 10, 1992 asking them to research my royalty payments after I suspected that maybe Enron Oil & Gas Company had also been mispaying my royalties. (See my letter dated September 10, 1992 to Mr. Robert McCommon of Enron Oil & Gas Company attached to this affidavit, which is a true and correct copy of the original letter).

\* \* \* \* \* \*

All of Morriss's motions were scheduled to be heard on November 22, 1994 along with Enron's Motion for Final Summary Judgment. At the hearing, the trial court granted Morriss's Motion for Continuance and for Further Discovery and denied several motions urged by Enron. The hearing was

followed by a period of discovery, including the taking of depositions by both parties.

Enron's Motion for Final Summary Judgment was heard by the trial court on February 28, 1995; however, the trial court declined to make its ruling and instead granted both parties further opportunity to pursue additional discovery, including additional depositions of various witnesses. Enron's Motion for Final Summary Judgment was once again rescheduled; this time for June 16, 1995.

On May 25, 1995, Enron filed supplementary summary judgment evidence consisting of several excerpts from the deposition testimony of Morriss. The excerpts of testimony reflect the following:

[Attorney for Enron] Q. All right, sir. I want to ask you what it is—in your own words right now, tell the ladies and gentlemen of the jury who may be hearing this—what it is that Enron Oil & Gas has done that constitutes negligence as you sued us for?

[Morriss] A. Fraudulently sent my money to my brother.

Q. . . . . Can you tell me what it is that Enron either did or failed to do that constitutes negligence by Enron as opposed to fraud?

A. Sent him my money without my authorization.

\* \* \* \* \* \*

Q. Is there anything else besides not paying the royalties to you and instead paying them to the brother, as we discussed at length today, that Enron Oil & Gas has either done or not done that constitutes negligence?

\* \* \* \* \* \*

A. I don't know. I don't know.

\* \* \* \* \* \*

Q. All right. Well, other than the items that you've stated in here as Nos. 1, 2, 3 and 4,[5] is there anything that Enron Oil & Gas has either done or not

5. Morriss's First Amended Original Petition alleged a laundry list of items alleged to constitute

gross negligence by Enron.

done that constitutes negligence or gross negligence that you know of as we're sitting here today?

A. I can't answer that at this time.

\* \* \* \* \* \*

Q. Well, is it fair to state that the act of conversion is the same act as paying your brother when—the same acts that constitute negligence in the gross negligence that we're talking about? Isn't that the same thing?

\* \* \* \* \* \*

A. I don't know.

Q. All right. That's fair enough. All right. Now, I'd like to ask you as to the interest of fraud, the claim of fraud that you've made in the pleadings. What is it that anyone at Enron Oil & Gas has stated to you that is false or misleading?

A. Where they sent my money.

Q. Okay. Somewhere [sic] told you they were sending the money somewhere they weren't actually sending it?

A. They were not sending it where I signed for it to be sent.

Q. Okay. Is it fair to state that—is there a person at Enron Oil & Gas that talked to you on the phone that told you a lie? Is there a letter that you received from anybody from Enron Oil & Gas that was a lie? Is there any such conversation or document that you know of as we sit here today?

\* \* \* \* \* \*

A. I can't answer that at this time.

\* \* \* \* \* \*

Q. I believe your answer was a moment ago, other than the payments to the wrong place, there's no lie or misstatement that you know of now that constitutes fraud. Isn't that correct?

A. That's true.

\* \* \* \* \* \*

Q. . . . I'm talking about the damages you've suffered because of our negli-gence. You're suing us for $20,000 for negligence, that number listed right there. Isn't that correct?

A. My understanding is this is the amount of money that I didn't get that I should have got. Now, whether that constitutes negligence or whatever it is, the legal term, I do not know. I'm just saying that is the—to my knowledge.

\* \* \* \* \* \*

Q. All right, sir. And I'm going to ask you the same question as to gross negligence. If what we did or didn't do constitutes gross negligence and the jury finds that we were grossly negligent, isn't it fair to state that you're suing us for the $20,000 plus the interest and the other items listed there?

A. That's true.

Q. But it's the $20,000?

A. That's true.

Q. All right, sir. Fair enough. And isn't it the same for conversion? If we've converted your property and sent it to the wrong place, the amount, you've been damaged by that conversion is that $20,000 alleged there for those payments sent and converted. Isn't that true?

\* \* \* \* \* \*

A. Yeah.

\* \* \* \* \* \*

Q. Now, I'm going to ask the same question about fraud. If we defrauded you somehow by sending these payments somewhere, isn't the damages you've suffered from this fraudulent act of paying to the wrong place or in the wrong manner the $20,000?

A. That's the base figure.

\* \* \* \* \* \*

On June 30, 1995, Morriss filed his Second Amended Original Petition. This petition essentially set out the same claimed tort violations [6] as previously alleged in the First Amended Original Petition. However, the Second Amended Petition alleged that "[o]n

---

**6.** No mention is made, however, of any fraud claim in the second amended petition. There is no indication that Enron objected to the filing of the this later petition and, presumably, it constituted the live petition at the time of disposition of Enron's Motion for Final Summary Judgment.

or about September 10, 1992, William L. Morriss notified the Defendant that the Defendant had been sending William L. Morriss' royalty checks to an improper account," whereas the First Amended Petition alleged that "[o]n or about September 10, 1992, William L. Morriss discovered and notified the Defendant that the Defendant had sent William L. Morriss' royalty checks to an improper account." Enron's Motion for Final Summary Judgment was heard and granted by the trial court on October 13, 1995 without specifying the grounds upon which it was granted.

In three points of error, Morriss claims trial court error in the granting of the motion for summary judgment in favor of Enron. Morriss's first point of error is a general challenge to the granting of the motion and his remaining challenges assert error in granting the motion because: (1) the suit was, allegedly, filed within four years of Morriss's discovery of Enron's breach; (2) Enron failed to prove that Morriss was able to know of Enron's breach more than four years prior to filing suit; and (3) there remains a factual issue as to when Morriss should have discovered the breach in the exercise of reasonable diligence.

### Summary Judgment

■ The issue on appeal from a summary judgment is whether the movant established, as a matter of law, his entitlement to summary judgment by conclusively proving that no genuine issues of material fact exist as to his cause of action or defense. *M.M.P. Ltd. v. Jones,* 710 S.W.2d 59, 60 (Tex.1986); *Delgado v. Burns,* 656 S.W.2d 428, 429 (Tex. 1983). The standards for reviewing a motion for summary judgment are well established: (1) the movant for summary judgment has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true; and (3) every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). Summary judgment may be rendered only if the pleadings, depositions, admissions, and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *See Rodriguez v. Naylor Indus., Inc.,* 763 S.W.2d 411, 413 (Tex.1989).

■ A defendant, as movant in the trial court in a summary judgment proceeding, may disprove at least one element of each of the non-movant's theories of recovery. *See City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 679 (Tex.1979). But when a defendant moves for summary judgment based on an affirmative defense, it is his burden to prove conclusively all elements of the affirmative defense as a matter of law and to preclude all genuine issues of material fact. *Id.; Pooley v. Seal,* 802 S.W.2d 390, 392 (Tex.App.—Corpus Christi 1990, writ denied). Thus, when a defendant seeks summary judgment on the basis that limitations have expired, it is his burden to conclusively establish when the action accrued and that it is barred. And the non-movant must, in a written answer or response to the motion, expressly present to the trial court those issues that would defeat the movant's right to a summary judgment, and failing to do so, may not later assign them as error on appeal. *Clear Creek Basin Auth.,* 589 S.W.2d at 679. The movant is not required to negate all possible issues of law and fact that could be raised by the non-movant in the trial court but were not. *Id.* at 678–79. However, issues not expressly presented to the trial court by written motion, answer, or other response shall not be considered on appeal as grounds for reversal. TEX.R. CIV. P. 166a(c); *Clear Creek Basin Auth.,* 589 S.W.2d at 676.

### The Affirmative Defense of Limitations

■ The statute of limitations is an affirmative defense. TEX.R. CIV. P. 94.[7] The

---

7. Rule 94 provides in pertinent part:

**Rule 94. Affirmative Defenses**

In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of

purpose of the statute is to compel the assertion of claims within a reasonable period after their origin and while the evidence upon which their enforcement or resistance rests is yet fresh in the minds of the parties or their witnesses. *Gaddis v. Smith,* 417 S.W.2d 577, 578 (Tex.1967).

The burden of proving an affirmative defense is on the defendant. He must specially plead it and prove it. *Southwestern Fire & Casualty Co. v. Larue,* 367 S.W.2d 162, 163 (Tex.1963). Thus, a defendant relying on the affirmative defense of limitations must plead, prove, and secure findings to sustain the plea of limitations.[8] *Woods v. William M. Mercer, Inc.,* 769 S.W.2d 515, 517 (Tex.1988). The defendant must, therefore, demonstrate when a cause of action accrued to establish that the statute of limitations is applicable as a bar to a plaintiff's case. *Liles v. Phillips,* 677 S.W.2d 802, 808 (Tex.App.—Fort Worth 1984, writ ref'd n.r.e.). The general rule is that a cause of action accrues when a wrongful act effects an injury, regardless of when the plaintiff learns of such injuries. *Robinson v. Weaver,* 550 S.W.2d 18, 19 (Tex.1977). In other words, limitations begin to run when the fact of injury is known. *See Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 351 (Tex.1990).

### The Discovery Rule

An exception to the general rule is known as the discovery rule and the rule is used to determine when the cause of action accrued. *Moreno,* 787 S.W.2d at 351. The discovery rule tolls the running of the limitations period until the time the injured party discovers, or through the use of reasonable care and diligence should have discovered, the injury. *Id.; Willis v. Maverick,* 760 S.W.2d 642, 644 (Tex.1988). The discovery rule is a plea in confession and avoidance. A plea in confession and avoidance is one which avows and confesses the truth in the aver-

ment of facts in the petition, either expressly or by implication, but then proceeds to allege new matter which tends to deprive the facts admitted of their ordinary legal effect, or to obviate, neutralize, or avoid them. *Woods,* 769 S.W.2d at 517. The plaintiff may, therefore, raise the discovery rule as an excuse for its failure to file suit within the appropriate period of limitations. *Id.* The burden is on the party seeking to benefit from the discovery rule to establish its applicability. *Id.* at 518. Accordingly, a party seeking to avail itself of the discovery rule must plead the rule, either in its original petition or in an amended or supplemental petition in response to the defendant's assertion of the limitations defense as a matter of avoidance. *Id.* A matter in avoidance of the statute of limitations that is not raised affirmatively by the pleadings will, therefore, be deemed waived. *See* Tex.R. Civ. P. 94; *Woods,* 769 S.W.2d at 518.

When the non-movant interposes a suspension statute, such as the discovery rule, the movant must further negate the discovery rule by proving as a matter of law that there is no genuine issue of fact about when the movant discovered or should have discovered the nature of his injury. *See Zale Corp. v. Rosenbaum,* 520 S.W.2d 889, 891 (Tex.1975); *see also Burns v. Thomas,* 786 S.W.2d 266, 267 (Tex.1990); *Delgado,* 656 S.W.2d at 429; *Weaver v. Witt,* 561 S.W.2d 792, 794 (Tex.1977). The Texas Supreme Court has indicated that the discovery rule is not applicable to a cause of action unless it has explicitly adopted it to a specific cause of action. *See Trinity River Auth. v. URS Consultants, Inc.,* 889 S.W.2d 259, 262–63 (Tex.1994) (noting that discovery rule is exception to general limitations rule and refusing to extend exception to negligent design and construction); *Kelley v. Rinkle,* 532 S.W.2d 947, 949 (Tex.1976) (extending rule to libel-of-credit-reputation scenario).

---

risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense.
Tex R. Civ. P. 94.

**8.** One asserting the statute of limitations as an affirmative defense must set out the proper statute of limitations in his pleadings or risk a waiver of the defense regardless of the proof in support of a statute not asserted. *See Selz Schwab & Co. v. Smith,* 44 S.W.2d 455, 457 (Tex.Civ.App.—Dallas 1931, writ dism'd w.o.j.).

■ With respect to causes of action for breach of contract, a four-year statute of limitations applies. TEX. CIV. PRAC. & REM. CODE ANN. § 16.004 (Vernon 1986);[9] *Enterprise–Laredo Assocs. v. Hachar's*, 839 S.W.2d 822, 837 (Tex.App.—San Antonio 1992, writ denied). Causes of action for negligence, gross negligence, and conversion are barred by a two-year statute of limitations. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 16.003(a) (Vernon Supp.1996) (conversion);[10] *James v. Klar & Winterman*, 118 S.W.2d 625, 626 (Tex.Civ.App.—Dallas 1938, no writ) (conversion); *Richker v. United Gas Corp.*, 436 S.W.2d 215, 218 (Tex.Civ.App.—Houston [1st Dist.] 1968, writ ref'd n.r.e.) (negligence). A claim of fraud or misrepresentation is a claim for a debt and, as such, is governed by a four-year statute of limitations. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 16.004(a)(3) (Vernon 1986); *Williams v. Khalaf*, 802 S.W.2d 651, 656–57 (Tex.1990).

■ The acts of a party may breach duties in tort or contract or simultaneously in both. The nature of the injury most often determines which duty or duties are breached. *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex.1986). If the defendant's conduct gives rise to liability independent of the fact that a contract exists between the parties, the plaintiff's claim may also sound in tort. *See id.* But not every breach of a contract accompanied by negligence creates a cause of action in tort. *See Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 495 (Tex.1991) (Gonzalez, J., concurring); *Wal–Mart Stores, Inc. v. Coward*, 829 S.W.2d 340, 344 (Tex.App.—Beaumont 1992, writ denied). When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone. *Jim Walter Homes, Inc.*, 711 S.W.2d at 618.

Enron has always taken the position that Morriss's cause of action is for breach of contract irrespective of it being cast in terms of tort. Reliance is had upon the holding in *Southwestern Bell Telephone Co. v. DeLanney*, 809 S.W.2d 493, 496 (Tex.1991), where the court held that if a party must prove the contents of its contract and relies on the duties created therein, the action is in substance an action on the contract, even though it is denominated an action for negligent performance of the contract. *Accord International Printing Pressmen & Assistants' Union v. Smith*, 145 Tex. 399, 409, 198 S.W.2d 729, 735 (1946); *Harrison v. Bass Enters. Prod. Co.*, 888 S.W.2d 532, 536 (Tex. App.—Corpus Christi 1994, no writ); *Airborne Freight Corp. v. C.R. Lee Enters.*, 847 S.W.2d 289, 293–94, 298 (Tex.App.—El Paso 1992, writ denied); *Goodyear Tire and Rubber Co. v. Portilla*, 836 S.W.2d 664, 671 (Tex. App.—Corpus Christi 1992), *aff'd*, 879 S.W.2d 47 (Tex.1994); *Wal–Mart Stores, Inc. v. Coward*, 829 S.W.2d at 343–44; *Bernard Johnson, Inc. v. Continental Constructors, Inc.*, 630 S.W.2d 365, 368 (Tex.App.—Austin 1982, writ ref'd n.r.e.). We need not, however, base our decision on whether Morriss's pleadings also raised the spectre of breach of contract because of the consistent position maintained by Morriss before the trial court that he was always relying on tort claims.

On appeal, Morriss relies on caselaw applying limitations in a breach of contract setting.[11] In fact, all of his points of error,

**9.** Section 16.004 provides in pertinent part:

**Four-year Limitations Period**

(a) A person must bring suit on the following actions not later than four years after the day the cause of action accrues:

\* \* \* \* \* \*

(3) debt.

TEX. CIV. PRAC. & REM.CODE ANN. § 16.004 (Vernon 1986).

**10.** Section 16.003(a) provides as follows:

**Two-Year Limitations Period**

(a) Except as provided by Section 16.0045, a person must bring suit for trespass for injury to the estate or to the property of another, conversion of personal property, taking or detaining the personal property of another, personal injury, forcible entry and detainer, and forcible detainer not later than two years after the day the cause of action accrues.

TEX. CIV. PRAC. & REM.CODE ANN. § 16.003(a)(Vernon Supp.1996).

**11.** Morriss relies on *Andretta v. West*, 415 S.W.2d 638 (Tex.1967); *Dallas Market Ctr. Hotel Co. v. Beran & Shelmire*, 865 S.W.2d 145 (Tex.App.—Corpus Christi 1993, writ denied); *Enterprise–Laredo Assocs. v. Hachar's, Inc.*, 839 S.W.2d 822 (Tex.App.—San Antonio 1992, writ denied); *El Paso Assocs., Ltd. v. J.R. Thurman & Co.*, 786 S.W.2d 17 (Tex.App.—El Paso 1990, no writ); and *Dorchester Gas Producing Co. v. Hagy*, 748 S.W.2d 474 (Tex.App.—Amarillo 1988, writ de-

except for the general challenge, allude to the trial court's error in applying the four-year statute of limitations to bar a suit filed more than four years following Enron's alleged breach. It is clear that the Second Amended Petition on file at the time of the entry of Final Summary Judgment did not allege a cause of action for breach of contract. The First Amended Petition is essentially the same as the second except for the missing fraud allegation. But if there be any doubt as to the character of the causes of action intended by Morriss's pleadings, we need only to briefly examine Morriss's response to Enron's Motion for Summary Judgment and brief in support, which contain the following remarks:

> The depositions of Myron D. Hoffman, M. Valasek, and Paul Darras are material to Plaintiff's case because they are the only persons whom Plaintiff has knowledge of who can be deposed concerning Plaintiff's causes of action for negligence, gross negligence, conversion, and fraudulent payment of Plaintiff's royalties.

> \* \* \* \* \* \*

> The affidavit of Cary V. Sorenson with attached documents is also attempting to establish that there is no genuine issue of material fact as to when Plaintiff either actually knew or should have known of his negligence, gross negligence, conversion, and fraud claims for the mispayment of his royalties.

> \* \* \* \* \* \*

> Because of Defendants' negligence, gross negligence, conversion, and fraudulent payment of royalties, *some* of the royalty payments that should have been sent to San Antonio Savings and Loan to satisfy the lien in question were instead mispaid.

> \* \* \* \* \* \*

> All claims of Plaintiff for negligence, gross negligence, conversion, and fraudulent payment of royalties are within the applicable statute of limitations period.

> \* \* \* \* \* \*

> More particularly, the affidavit of William L. Morriss filed and served with this

response creates issues of fact regarding the statute of limitations as to the cause of action of conversion as alleged in Plaintiffs' First Amended Original Petition, as well as the negligent, gross negligent, and fraudulent payment of royalties by Defendant.

> \* \* \* \* \* \*

> Defendant's [sic] First Amended Original Petition alleges causes of action based on negligence, gross negligence, fraud and conversion.

> \* \* \* \* \* \*

> Since the Plaintiff has alleged causes of action based on negligence, gross negligence, fraud and conversion, the Defendant must negate the application of the discovery rule.

Morriss's Motion to Disqualify Counsel contains similar statements acknowledging that the current petition alleges only causes of action for negligence, gross negligence, conversion, and fraudulent payment.

A cursory examination of Morriss's response to Enron's initial Motion for Summary Judgment is also enlightening. The following statements are found therein:

> The movant relies on the statute of limitations defense for a contract cause of action. *However, Plaintiff's Original Petition and First Amended Original Petition allege causes of action based on negligence, gross negligence and conversion.*

> \* \* \* \* \* \*

> Since the Plaintiff has alleged causes of action based on negligence, gross negligence, and conversion, the Defendant must negate the application of the discovery rule.

(emphasis added).

 It is beyond question that Morriss never relied upon a contractual breach as a cause of action in either of the first two petitions he filed. By his own admission, this is so. But on appeal he does not complain of any summary judgment ruling touching on any of his tort claims. Therefore, any complaint of error in the granting of summary

nied), *judgmt. set aside on joint mot. of parties,* 777 S.W.2d 709 (Tex.1989).

judgment as to negligence, gross negligence, and conversion has been waived by abandonment.

■ We must examine Morriss's Second Amended Original Petition because Morriss's sole complaint on appeal addresses only alleged error in barring recovery under a contract theory and Morriss clearly disavowed any such claim in both his Original Petition and First Amended Original Petition. Morriss's Second Amended Original Petition contains allegations of negligent and grossly negligent conduct, as well as conduct constituting conversion. Paragraph VIII reads:

The fair market value of the property and damages caused at the time and place of the conversion was an amount exceeding $60,000 for which sum Plaintiff hereby sues. This sum consists of damages separate from barred contractual damages, for negligence and conversion, plus exemplary damages for gross negligence and conscious indifference for the rights of Plaintiffs.

The prayer closes with a plea for damages incurred as a result of negligence, gross negligence, and conversion.

■ We do not believe that even the most liberal reading of any of Morriss's petitions supports the conclusion that he has ever asserted a claim for breach of contract, irrespective of the partial summary judgment granted on that basis.[12] This court will not affirm a summary judgment on a ground that was not specifically presented in the motion for summary judgment. *Travis v. City of Mesquite*, 830 S.W.2d 94, 100 (Tex.1992). Nor will we reverse a summary judgment on a ground that was not expressly presented to the trial court by a written motion, answer, or other response to the motion for summary judgment. *Travis*, 830 S.W.2d at 99–100. Further, we will not reverse a summary judgment on a ground that was expressly presented to the trial court by a written motion, answer, or other response to the motion for summary judgment, but that was subsequently abandoned by the non-movant. *Clear Creek Basin Auth.*, 589 S.W.2d at 677.

In the instant case, Morriss's only response to Enron's Motion for Summary Judgment was to raise the discovery rule to Enron's plea of limitations to Morriss's tort claims. But there is no complaint about the trial court's rulings as to the tort claims. We hold that Morriss has abandoned any complaint he might have had with regard to tort claims.

Since, according to Morriss, contractual claims have never been a part of the case, any complaint on appeal with regard to contractual breaches is inappropriate. Morriss's failure to urge contractual breaches at the trial court level presents nothing for review by this court. Whatever claims of contractual breach may have existed have been waived.

■ Although Morriss has assigned a general point of error contending that the trial court erred in granting summary judgment, all of the arguments advanced in support of this contention are based on contractual limitations. Clearly Morriss was entitled, under this general assignment, to present argument on all grounds upon which he contends that summary judgment was inappropriate. *See Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex.1970). However, he has failed to do so. Instead, he has focused on contractual limitations and the discovery rule as applicable thereto. Failure to take advantage of the opportunity to present argument on the alternative ground results in waiver. *See Martin v. Cohen*, 804 S.W.2d 201, 202 (Tex.App.—Houston [14th Dist.] 1991, no writ); *see also State Farm Fire & Casualty Co. v. S.S.*, 858 S.W.2d 374, 381 (Tex.1993) (stating that when there are multiple grounds for summary judgment and the order does not specify the ground on which the summary judgment was granted, the appealing party must negate all grounds on appeal).

We find no error requiring reversal in the granting of summary judgment under the unique circumstances presented by this ap-

**12.** Since Morriss admits he did not plead a breach of contract cause of action when partial summary judgment was granted as to any and all contract causes of action, we perceive no harm to Morriss in granting that motion.

peal. The judgment of the trial court is, accordingly, affirmed.

### Enron's Rule 84 Motion

■ Enron, by way of motion incorporated into its reply brief, rather than by cross-point, requests an award of damages against Morriss pursuant to Rule 84 of the Texas Rules of Appellate Procedure.[13] We will treat the Motion as a cross-point and address it accordingly.

■ Enron contends that Morriss brought this appeal solely for delay and without sufficient cause and requests an award of damages equal to ten times the taxable costs for a total amount of $38,271. Enron claims that Morriss could not have possibly entertained any reason to believe that the appeal might be successful because the single point presented for review was predicated upon a theory never expressly raised in the trial court, either in his pleading or in any of his three summary judgment responses. Moreover, Enron says, Morriss never bothered to appeal the one theory actually raised below that could have been presented to this court.

■ Before an appellate court may assess damages under Rule 84, it must find: (1) the appeal was taken for delay, and (2) there was no sufficient cause for the appeal. TEX.R.APP. P. 84; *In re Estate of Kidd,* 812 S.W.2d 356, 360 (Tex.App.—Amarillo 1991, writ denied). In making such findings, this court must review the record from the standpoint of the advocate and determine whether he or she had reasonable grounds to believe the judgment should be reversed. *Daniel v. Esmaili,* 761 S.W.2d 827, 830 (Tex.App.—Dallas 1988, no writ).

Four factors which tend to indicate an appeal was filed for delay and without sufficient cause are: (1) the unexplained absence of a statement of facts; (2) the unexplained failure to file a motion for new trial when it is required to successfully assert factual sufficiency on appeal; (3) a poorly written brief raising no arguable points of error; and (4) the appellant's unexplained failure to appear at oral argument.

*Hicks v. Western Funding, Inc.,* 809 S.W.2d 787, 788 (Tex.App.—Houston [1st Dist.] 1991, writ denied). In a summary judgment proceeding, a statement of facts is inappropriate and will not be considered by the reviewing court. Nor is a motion for new trial necessary following the granting of summary judgment. Morriss did file an adequate appellate brief and a response to Enron's reply brief. Finally, Morriss's appeal was vigorously argued before this court.

■ Although the single point on appeal was not successful as a result of confusion created in part by the nature of the claims involved, we cannot conclude that the appeal was taken for delay. To some degree, the confusion must be cast upon Enron as well. Throughout the proceedings, it insisted that Morriss's cause of action was simply a contractual one.[14] The trial court's granting

---

**13.** Rule 84, in pertinent part, provides:
**Damages for Delay in Civil Cases**
 In civil cases where the court of appeals shall determine that an appellant has taken an appeal for delay and without sufficient cause, then the court may, as part of its judgment, award each prevailing appellee an amount not to exceed ten percent of the amount of damages awarded to such appellee as damages against such appellant. If there is no amount awarded to the prevailing appellee as money damages, then the court may award, as part of its judgment, each prevailing appellee an amount not to exceed ten times the total taxable costs as damages against such appellant.
TEX.R.APP. P. 84.

**14.** While technically, Morriss's cause of action should have been cast as one for a contractual breach, a defendant may not dictate to a plaintiff how to plead his cause of action. Still, a plaintiff can recover, if at all, only on the cause of action pleaded by him. *Safety Casualty Co. v. Wright,* 138 Tex. 492, 160 S.W.2d 238, 245 (1942). His claims are fixed by the factual circumstances alleged in the petition, and are not changed by the insertion therein of incorrect descriptions in terms of legal conclusions. *See First Nat'l Bank of Hico v. English,* 240 S.W.2d 503, 505–06 (Tex.Civ.App.—Waco 1951, no writ); *see also Jim Walter Homes, Inc.,* 711 S.W.2d at 617–18.

But if a plaintiff insists that a contract action is a tort action, his pleadings will be given the construction that he has given them and acted upon. *Universal Credit Co. v. Vance,* 117 S.W.2d 508, 511 (Tex.Civ.App.—El Paso 1938, writ dism'd); *see also Parr v. Pichinson,* 370 S.W.2d 941, 944 (Tex.Civ.App.—San Antonio 1963, writ ref'd); *Stinson v. King,* 83 S.W.2d 398–399 (Tex.Civ.App.—Dallas 1935, writ dism'd). This is especially true when responding to a Motion for

of partial summary judgment no doubt contributed to that belief.

Morriss's decision to appeal on the basis of contractual breach rather than on his tort theories was not totally without some justification in view of the fact that a partial summary judgment was granted on that basis. The fact that his insistence that his pleadings alleged only tort claims now precludes him from changing horses in midstream may be indicative of poor judgment, but does not necessarily indicate bad faith. Moreover, this court is mindful that the area of law some have labeled "contorts" is still in an unsettled state.[15]

■ This court will not award delay damages for "poor lawyering," in the absence of some stronger showing that the appeal is one taken in bad faith, because such damages serve only to punish the client. *See Daniel*, 761 S.W.2d at 831.

We decline to award delay damages under the circumstances before us.

The judgment of the trial court is affirmed.

Summary Judgment since evidence favorable to the non-movant will be taken as true, every reasonable inference indulged in his favor, and doubts resolved in his favor. *Nixon*, 690 S.W.2d at 548–49.

However, Morriss never purported to plead breach of contract and, in fact, vigorously denied pleading it. He may not now rely upon a different theory of recovery for the first time on appeal. *State of Cal. Dep't of Mental Hygiene v. Bank of S.W. Nat'l Ass'n*, 163 Tex. 314, 354 S.W.2d 576, 581 (1962); *Safety Casualty Co.*, 160 S.W.2d at 245; *Cadmus v. Evans*, 320 S.W.2d 176, 182 (Tex.Civ.App.—Dallas 1958 writ ref'd n.r.e); *Moseley v. Texas & New Orleans R.R. Co.*, 346 S.W.2d 636, 638 (Tex.Civ.App.—Waco 1961, writ ref'd n.r.e.).

**15.** *See e.g., Airborne Freight*, 847 S.W.2d at 293 ("The law of 'contorts' is a muddy area, devoid of bright line rules or easy answers as to what conduct constitutes a tort, and what a breach of contract"); *International Printing Pressmen and Assistants' Union*, 145 Tex. at 409, 198 S.W.2d at 735 (noting that "while the general distinction between actions in contract and in tort is clearly defined and well understood, it is often difficult to determine whether a particular action is the one or the other"); *Jim Walter Homes, Inc.*, 711 S.W.2d at 617; *Southwestern Bell Tel. Co.*, 809 S.W.2d at 495 (Gonzalez, J., concurring).