NO. 07-04-0486-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



DECEMBER 27, 2005



______________________________




DUKE ENERGY FIELD SERVICES, L.P., APPELLANT



V.



GLENDELL MEYER, ROSE MARIE MEYER, AND EDDITH M. HINKLE, APPELLEES


 


_________________________________



FROM THE 31ST DISTRICT COURT OF LIPSCOMB COUNTY;



NO. 02-01-3706; HONORABLE STEVEN EMMERT, JUDGE



_______________________________



OPINION



Before QUINN, C.J., and REAVIS and CAMPBELL, JJ.



 Duke Energy Field Services, L. P. presents five issues complaining of the judgment
rendered based upon jury findings that Eddith M. Hinkle recover $77,473.53 plus pre-judgment interest and attorney's fees against Duke. (1) Duke does not challenge the award
to Hinkle that she recover the sum of $1,000 for damages to her land and related attorney's
fees in the amount of $3,186. Presenting issues one and two, Duke challenges the legal
and factual sufficiency of the evidence to support a finding of causation. By issue three,
Duke challenges the legal sufficiency of the evidence to support a finding that Duke
breached its duty of ordinary care, and by issue four, Duke contends the trial court erred
by submitting an instruction on the inference of res ipsa loquitur. By the fifth issue, Duke
challenges the award of attorney's fees to the Meyers due to the absence of a contract. 
By two cross-points, Hinkle contends the trial court erred in (1) not submitting the nuisance
claim and (2) refusing to submit the trespass claim. 

 On May 21, 1970, Hinkle's predecessors in title, Harold Perry and Alice Perry, as
grantors, executed an easement granting rights to construct, operate, maintain, and repair
a pipeline upon the subject lands in Lipscomb County to Phillips Petroleum Company. (2) 
Among other things, the easement provided that Phillips Petroleum would "pay grantors for
any other or additional damages to growing crops, grass, fences, improvements and
livestock which may result of the exercise of the rights" therein granted. By written lease
dated November 28, 1994, Hinkle's predecessors, via the family trust, made a surface
lease for agricultural purposes to Glendell Meyer for a term of two years. Upon distribution
of the land, Hinkle orally continued the 1994 grass lease with Meyer who placed 45 cows
on the 928 acre pasture, the leased premises. 

 On the morning of January 10, 2001, when Meyer went to the pasture to feed hay,
he saw the cows in a circle gathered around a leak area in the pasture. The cows were 
standing in a black-green oily product, and he saw them licking and rubbing their noses in
the oily product. Meyer moved the cows to another portion of the pasture and later that
day, at his request, an employee of Duke placed some temporary fencing around the leak
site. The cows in the pasture were bred to start calving around March 1. When Meyer
inspected the cows the following morning, he found some cows heaving and some had
aborted calves, but he could not find the aborted calves. On January 2, 2002, Meyer and
Hinkle filed suit for damages to the cows and surface damages alleging multiple grounds
for recovery. 

 On March 11, 2002, the Meyers assigned their cause of action against Duke
pursuant to section 12.014 of the Texas Property Code. At the conclusion of the evidence,
the trial court submitted the case to the jury. As material to this appeal, the charge
presented questions to the jury of (2) Duke's negligence and proximate cause and (3)(b)
Duke's failure to comply with the agreement and proximate cause. In connection with the
negligence question, the trial court submitted an instruction regarding res ipsa loquitur. In
addition, the trial court instructed the jury as follows:

 A fact may be established by direct evidence or by circumstantial
evidence, or both. A fact is established by direct evidence when proved by
documentary evidence or by witnesses who saw the act done or heard the
words spoken. A fact is established by circumstantial evidence when it may
be fairly and reasonably inferred from other facts proved.


Duke did not object to the instruction regarding circumstantial evidence.

 Answers favorable to Hinkle being returned, the court then rendered its judgment
on July 28, 2004. By its partial motion for new trial, Duke contended (1) the evidence was
factually insufficient that its negligence or breach of contract caused any damage to the
cows, and (2) the evidence was factually insufficient that the pipeline leak resulted from the
negligence of Duke. After its partial motion for new trial was overruled, Duke timely filed
its notice of appeal. Regarding its legal and factual sufficiency of the evidence claims, 
Duke does not present an issue contending the trial court erred in admitting the opinion of
Meyer or that the nature of the injuries to the cows were such that expert testimony was
required to establish causation of the alleged injuries to the cows. (3)

 By its answer to question two, the jury found that Duke's negligence was a 
proximate cause of the injury to the cows. Then, by its answer to question 3(b) the jury
found that Duke's failure to comply with the easement agreement was also a proximate
cause of damages to the cows. By its first and second issues, Duke contends the
evidence was legally and factually insufficient to support a finding of causation.


Standard of Review


 In our examination of the contentions of a lack of evidence, we must review the
entire record to determine whether there is more than a scintilla of evidence to support the
findings, and if so, the findings will be upheld. Stedman v. Georgetown Sav. & Loan Ass'n,
595 S.W.2d 486, 488 (Tex. 1979); Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965). 
Evidence is merely a scintilla when it is so weak as to do nothing more than create a mere
surmise or suspicion of a fact. Seideneck v. Cal Bayreuther Associates, 451 S.W.2d 752,
755 (Tex. 1970). We must consider only the evidence and the reasonable inferences which
can be drawn therefrom in their most favorable light to support the jury's findings while
disregarding all contrary evidence and inferences. Browning-Ferris, Inc. v. Reyna, 865
S.W.2d 925, 928 (Tex. 1993).

 If there is some evidence to support the findings, we must then determine its factual
sufficiency. In so doing, we must consider and weigh all the evidence and set aside the
verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly
wrong and unjust. Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986); Dyson v. Olin
Corp., 692 S.W.2d 456, 457 (Tex. 1985). Each of the sufficiency complaints herein will be
evaluated utilizing these standards of review.

 By its first issue, Duke contends the evidence was legally insufficient to support the
jury findings of causation. We disagree.

 Meyer had placed cattle on the leased pasture for several years before the leak was
discovered. Evidence of the pipeline leak on January 10, 2001 of oil or other petroleum
solution in the pasture where Meyer's cows were located is undisputed. Meyer testified
that 100 per cent of his cows delivered calves the first year he owned them and they were
bred to start calving March 1, 2001, or thereafter. Also, he testified that after he saw the
cows licking and smelling the oil at the leak site, one cow aborted her calf the next day and
that over a period of time, 30 cows aborted or had dead calves and the next year, 17 of 39
remaining cows were barren or had calves that died. Meyer also testified that, in his
opinion, the calving problem was caused by the cows ingesting the oil or other liquid at the
leak site and he did not know of any other reason that could have caused the calving
problems. (4) Doctor Skaggs, DVM and another veterinarian testified that, among other
possible known factors, drinking oil can cause cows to abort their calves.

 Reviewing this evidence in light of the circumstantial evidence instruction and
considering the evidence favorable to the verdict only, an inference of causation is
presented by the objective facts. Duke argues that expert testimony is necessary to
establish causation unless general experience and common sense will enable a layman to
fairly determine the causal relationship between the occurrence and the injury. Because
Duke did not object to the testimony of Meyer, and this contention was not otherwise
presented to the trial court, it may not be considered for the first time on appeal. State of
Cal. Dept. of Mental Hygiene v. Bank of the S.W. Nat. Ass'n, 163 Tex. 314, 354 S.W.2d
576, 581 (1962). Then, citing E. I. du Pont de Nemours and Co., Inc. v. Robinson, 923
S.W.2d 549, 556 (Tex. 1995), Duke, however, argues the evidence is not sufficiently
relevant and reliable to meet the requirements of Rule 702 of the Texas Rules of Evidence. 
However, Robinson is not controlling here because it was concerned with the admissibility
of evidence which is not at issue here. Moreover, by its failure to object to Meyer's opinion
as being unreliable, Duke waived any contention that the opinion was unreliable. See
Guadalupe-Blanco River Authority v. Kraft, 77 S.W.3d 805, 807 (Tex. 2002); Texas Dept.
of Human Services v. Green, 855 S.W.2d 136,149 (Tex.App.-Austin 1993, writ denied). 
Also, Duke's failure to request a limiting instruction regarding the causation opinion of
Meyer per Rule 105(a) of the Texas Rules of Evidence, it waived its complaint to general
admission of the evidence. Birchfield v. Texarkana Memorial Hosp., 747 S.W.2d 361, 365
(Tex. 1987). Considering only the evidence and the reasonable inferences which can be
drawn therefrom in their most favorable light to support the jury's findings and disregarding
all contrary evidence and inferences, we conclude the evidence was legally sufficient to
support the jury findings to question 2 and question 3(b). Accordingly, issue one is
overruled.

 By its second issue, Duke contends the evidence was factually insufficient to support
a finding of causation. We agree.

 Having found there is some evidence to support the findings, we now review and
consider all of the evidence to determine if the verdict is so contrary to the overwhelming
weight of the evidence as to be clearly wrong and unjust. In addition to the evidence
mentioned above, in summary form, according to the record: 


 Although Meyer saw the cows standing at the leak site while licking
and sticking their noses in the surface, there is no evidence that the
cows actually ingested oil; or if they did, the quantity of the oil
ingested.
 Meyer guessed that five or six cows may have ingested oil but there
was no evidence identifying which cows may have ingested oil.
 Dr. Skaggs and Dr. Halliburton testified there are numerous factors
which can cause cows to abort calves, but there was no evidence
showing the quantity of oil required to cause a cow to abort her calf.
 Dr. Skaggs and Dr. Halliburton testified that numerous potential
causes of the abortions were not ruled out by testing.
 Lab results were inclusive for oil exposure. 
 Afterbirth of cows was not tested for traces of petroleum.
 Lab results of the three cows tested did not indicate oil exposure and
no oil found in stool samples.
 Dr. Skaggs testified the initial effect of oil ingestion causes cattle to
stumble and slobber and have muscle seizures and spasms; however
there was no evidence of this behavior.
 Blood test revealed the cows were low in protein and magnesium and
other minerals. Results showed poor nutrition which could have been
a factor.
 Dr. Skaggs admitted that based on the lab results, oil exposure would
be impossible to prove.
 Dr. Halliburton concluded that to a reasonable veterinary certainty, he
could not testify it was more likely than not the Meyer's cows aborted
calves or died due to the oil ingestion.



 Hinkle was not required to establish causation by a scientific certainty or exclude 
every other possibility. Purina Mills, 948 S.W.2d at 936. However, because the evidence
suggests that several conditions or events could have caused the cows to abort their calves
and where, as here, circumstances are consistent with either of two or more facts and
nothing shows that one is more probable than the other, neither fact may be inferred. See
Roth v. FFP Operating Partners, L.P., 994 S.W.2d 190, 197 (Tex.App.- Amarillo 1999, pet.
denied). Considering all of the evidence as a whole, we find the evidence factually
insufficient to support a finding that in reasonable probability the ingestion of the oil by the
cows caused injuries to them. Accordingly, Duke's second issue is sustained.

 Having sustained Duke's second issue and concluded that the judgment of the trial
court must be reversed and the cause remanded, we do not address the remaining issues
and cross-points because further review is unnecessary, Tex. R. App. P. 47.1, and could
amount to an advisory opinion. Valley Baptist Medical Center v. Gonzalez, 33 S.W.3d 821,
822 (Tex. 2000). 

 Accordingly, we affirm that part of the judgment that Eddith M. Hinkle recover the
sum of $1,000 for damages to her land and related attorney's fees in the amount of $3,186
from Duke; otherwise, in all other respects, the judgment is reversed and the cause is
remanded to the trial court for further proceedings.


 Don H. Reavis

 Justice
1. The judgment signed July 28, 2004, did not make any award to Glendell Meyer or
Rose Marie Meyer.
2. At the time of trial, Duke was the assignee of record of the May 21, 1970 easement. 

3. Cf. Purina Mills, Inc. v. Odell, 948 S.W.2d 927, 936 (Tex.App.-Texarkana 1997, writ
denied); Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex. 1995).
4. Duke did not present any objection grounded on Texas Rules of Evidence 701, 702,
or otherwise.



evidence for abuse of discretion;
Page v. State, 213 S.W.3d 332, 337 (Tex.Crim.App. 2006), and "[a]ppellate courts will
uphold a trial court's ruling on admissibility of evidence as long as the trial court's ruling was
at least within the zone of reasonable disagreement." Id. See Hernandez v. State, 205
S.W.3d 555, 558 (Tex.App.--Amarillo 2006, pet. ref'd). 

 At trial, Benavidez testified that he recognized the teletypes as confirmation that there
was a valid warrant pending for Tina LeClear's arrest out of Curry County, New Mexico. He
also testified the teletypes were true and correct copies and were kept in the regular course
of business as a law enforcement officer. On its face, Benavidez's testimony supplied the
predicate for admission of the teletypes pursuant to Rule 803(6) of the Texas Rules of
Evidence. 

 Appellant's objection is that Benavidez's testimony is deficient because he is not a
record custodian, i.e. does not keep the records, is not a records clerk, or has anything to
do with the records. In Melendez v. State, 194 S.W.3d 641, 644 (Tex.App.--Houston [14th
Dist.] 2006, pet. ref'd), the Court stated:

 [T]he predicate for the business records exception to the hearsay rule may be
established either by the custodian of the records or another qualified witness. 
Tex. R. Evid. 803(6). Rule 803(6) does not require that the witness be the
person who made the record or even be employed by the organization that
made or maintained the record, and appellant cites no authority imposing any
such requirement.


 Benavidez supplied the necessary predicate for admission of the teletypes and 
Appellant has offered no evidence to show either that Benavidez was not a qualified witness
or his testimony was not trustworthy. There simply is no requirement under Rule 803(6) that
Benavidez be a record custodian or person in charge of keeping the record. Thus we find
no error in admitting the exhibits. 

 Alternatively, if the evidence was improperly admitted, the error was cured through
Benavidez's unobjected to testimony relating to the events that transpired on the morning
of July 6, 2005, and the subsequent unopposed admission of the bench warrant. Error in
the admission of evidence is cured where the same evidence comes in elsewhere without
objection, either before of after the complained-of ruling. Lane v. State, 151 S.W.3d 188,
192-93 (Tex.Crim.App. 2004). See Murphy v. State, 229 S.W.3d 334, 343 (Tex.App.--Amarillo 2006, pet. ref'd). Issue two is overruled.

Issue Three

 Appellant contends the trial court erred by failing to charge the jury on the lesser-
included offense of hindering apprehension, a misdemeanor pursuant to § 38.05(c). 
Specifically, Appellant contends he was entitled to a charge on the lesser-included offense
because the State failed to present any specific evidence to establish whether Tina LeClear's
failure to appear was a felony or misdemeanor under New Mexico law. We disagree. 

 Under the Texas Code of Criminal Procedure, an offense is a lesser-included offense
if it is established by proof of the same or less than all the facts required to establish the
commission of the offense charged. Tex. Code Crim. Proc. Ann. art. 37.09 (Vernon 2006).
A defendant is entitled to a lesser-included offense jury charge if: (1) the requested charge
is a lesser-included offense of the offense charged, and (2) there is some evidence that if
the defendant is guilty, he is guilty only of the lesser offense. Guzman v. State, 188 S.W.3d
185, 188 (Tex.Crim.App. 2006) (emphasis added). The evidence must establish the lesser-included offense as a valid rational alternative to the charged offense. McKinney v. State,
207 S.W.3d 366, 370 (Tex.Crim.App. 2006). 

 The first prong of this test requires that we compare the elements of the two offenses
to determine if the requested charge is a lesser-included offense of the offense charged. 
The elements of hindering apprehension or prosecution contained in § 38.05(a) must be
proven whether conviction is sought for a Class A misdemeanor or a felony of the third
degree. See § 38.05(a) & (c). To raise the offense from a misdemeanor to a felony, the
State must additionally prove that (1) the person harbored or concealed is under arrest for,
charged with, or convicted of a felony, and (2) the accused knew the person harbored or
concealed was under arrest for, charged with, or convicted of a felony. § 38.05(c). Thus,
because the difference between the offense as charged and the lesser offense charge
requested by Appellant is established by proof of the same or less than all the facts required
to establish the commission of the offense charged, the Class A misdemeanor offense of
hindering apprehension or prosecution is a lesser-included offense of the felony offense of
hindering apprehension or prosecution. 

 The second prong of the test then requires that we determine whether there is some
evidence that would permit a jury to rationally find, if Appellant is guilty, he is guilty only of
the lesser offense. As discussed hereinabove, the record is replete with evidence that
Benavidez and Tucker arrested Tina LeClear pursuant to a warrant that issued out of Curry
County, New Mexico, incident to the original offense of felony possession of a controlled
substance. Furthermore, the undisputed evidence establishes that Appellant was told that
Tina LeClear was a fugitive incident to a charge, arrest, or conviction of a felony offense. 

 Appellant has not identified, and we cannot find any evidence adduced at trial that
would indicate that Appellant did not know that Tina LeClear was being sought in connection
with a felony warrant issued incident to a charge, arrest, or conviction of a felony offense. 
Thus, Appellant has failed to establish that the lesser-included offense is a valid rational
alternative to the offense charged, and the trial court did not err by refusing the instruction
on the lesser-included offense. See Powell v. State, 206 S.W.3d 142-43 (Tex.App.-Waco
2006, pet. ref'd). Appellant's third issue is overruled.Issue Four

 By his fourth and final issue, Appellant contends the trial court erred in denying
Appellant's motion for mistrial. In support, Appellant contends that, during the punishment
hearing, the State improperly attempted to inject that he had a prior felony conviction
because he was not making an application for probation. We disagree.

 During the closing statement on punishment by the State, the following occurred:

 MR. HOCKER: Finally, you will notice that probation is not an option in this
case. And the law in the State of Texas is that in order to be eligible for
probation, you have to be able to establish that you've never been convicted
of a felony in this state, any other state -


 MR. MCKINNEY: I object that this argument is not relevant before this jury.


 THE COURT: Sustained.


 MR. MCKINNEY: I'd ask for an instruction in that regard, Your Honor.


 THE COURT: All right. Ladies and gentlemen, you will disregard that
argument.


 MR. MCKINNEY: I'd ask the Court to grant a motion - move for mistrial -
because that - I don't believe that instruction would cure that error.


 THE COURT: Denied.


 MR. HOCKER: What I'm saying to you, ladies and gentlemen, is that probation
is not an option in this case. It is simply going to be a penitentiary time
sentence.


 MR. MCKINNEY: He's arguing behind the Court's ruling now.


 THE COURT: Sustained.


 MCKINNEY: May I have an instruction?


 THE COURT: You have the instruction. You will disregard that argument. 
Counsel, proceed to the next argument.


 MCKINNEY: I'd like to have a mistrial at this time.


 THE COURT: Denied.


 The issue before this Court is whether the trial court's refusal to grant the mistrial
constituted an abuse of discretion. See Hawkins v. State, 135 S.W.3d 72, 76 (Tex.Crim.App.
2004). To support such a finding by this Court, the jury argument must be extreme or
manifestly improper, or inject new and harmful facts into evidence to constitute reversible
error. Shannon v. State, 942 S.W.2d 591, 597-98 (Tex.Crim.App. 1996). In most cases, if
error occurs, either a withdrawal of the question or an instruction to disregard will cure any
error committed; id., and only in extreme circumstances, where the prejudice is incurable,
will a mistrial be required. Hawkins, 135 S.W.3d at 77. With these standards in mind, the
Court will apply the test tailored for punishment proceedings and balance three factors: (1)
the severity of the misconduct (prejudicial effect), (2) curative measures, and (3) the certainty
of the punishment assessed absent the misconduct (likelihood of the same punishment
being assessed). Id. 

 The prosecutor's argument was inappropriate but not egregious. In both instances,
the prosecutor correctly stated the law, i.e., probation was not a sentencing option for the
jury. In addition, any inference that may have been drawn by the jury from the prosecutor's
statement that a prior felony conviction negates the possibility for probation was not
reversible error because the prosecutor had already given the jury a complete description
of Appellant's extraneous offenses without objection. Furthermore, curative action was taken
by the court with two immediate instructions to disregard. Finally, Appellant's sentence of
five years imprisonment and a $2500 fine was well within the statutory limits. That Appellant
repeatedly lied to the arresting officers regarding when he had last seen Tina LeClear and
her whereabouts while surreptitiously concealing her in the residence's crawlspace
adequately explains the sentence handed down by the jury in this case. Accordingly, we
conclude the trial court did not abuse its discretion in denying the request for a mistrial and
overrule Appellant's fourth issue.Conclusion

 Consequently, having overruled Appellant's four issues, we affirm the trial court's
judgment.

 Patrick A. Pirtle

 Justice



Do not publish. 
 
 
 
 

 

 

 
1. Because the Texas Penal Code does not define the term "offense"; see Tex. Penal Code
Ann. § 1.07 (Vernon 2003), the term must be defined by common usage unless the word has
acquired a technical or particular meaning. Tex. Gov't Code Ann. § 311.011 (Vernon 2005). See
also Tex. Penal Code Ann. § 1.05(b) (Vernon 2003). The common definition of "offense" is an
"infraction of the law"; Merriam-Webster's Collegiate Dictionary p. 861 (11th Ed. 2003), and an offense
may be designated either as a felony or misdemeanor. 18 Tex. Jur. 3d § 1254 (2001). In fact, a
violation of an "offense" under § 38.05, may constitute a misdemeanor or felony depending on
whether the person harbored or concealed is under arrest for, charged with, or convicted of a felony. 

2. Appellant's brief contends the State failed to establish an offense because Tina
LeClear had already been found guilty of the charge of possession of a controlled substance;
whereas, Appellant's oral arguments focused on the new offense of failure to appear.